**CURTIS et al. v. YALE OIL REFINING CO.**

No. 11241—Opinion Filed June 19, 1923.

1. **Contracts — Consideration — Unambiguous Language.**

   Where the agreement between parties is reduced to writing and mutually signed, and where the consideration agreed upon is expressed in unequivocal language which is free from ambiguity, the obligee in the contract is estopped to insist upon a strained and unnatural construction of the language used in order to import a consideration more favorable to himself than that plainly expressed in the contract.

2. **Brokers—Agreement for Compensation—Writing Controls.**

   Where brokers procured contracts for their principal with certain oil producers, and as compensation for their services agreed in writing to accept "five cents per barrel for each barrel of oil sold and delivered * * * to the party of the first part herein," in the absence of allegations and proof of mistake or fraud, there is no implied agreement on the part of the principal that it will not dispose of its business during the term of the contracts with the producers.

   (Syllabus by Logsdon, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Payne County; Arthur R. Swank, Judge.

Action by Ben M. Curtis and J. C. Fowler against Yale Oil Refining Company to recover upon a contract for certain services rendered by plaintiffs to defendant. Demurrer to plaintiffs' evidence sustained, and judgment for defendant, to reverse which this proceeding in error was commenced. Affirmed.

Plaintiffs were brokers in the oil and gas business, and were employed by the defendant to find oil producers who would contract with defendant to supply it with the entire output of crude oil from certain leases for the period of one year, the defendant being engaged in operating an oil refinery at Yale. Plaintiffs found two producers who were willing to furnish the defendant all of their crude oil production for one year, and the defendant thereupon entered into written contracts with each of said producers to take the entire output controlled by them for one year, from about January 15, 1917. After the execution of the contracts by defendant and the two producers, plaintiffs and defendant executed written agreements covering each of the leases from which this production was to come, said contracts being identical except as to the name of the producer furnishing the oil and the description

of the lease from which the oil was to be taken. This contract between plaintiffs and defendant was in the following language:

"Contract.

"This agreement, made and entered into on this 23rd day of December, 1916, by and between Yale Oil Refining Company, a corporation, party of the first part, and J. C. Fowler and Ben M. Curtis, parties of the second part.

"Witnesseth: That, whereas, party of the first part has on this date entered into a certain contract with the Westerly Oil Company, a corporation of Bartlesville, Oklahoma, for the purchase from it of all the oil produced on the lease covering, southeast quarter (S. E. ¼) of section seven (7), township nineteen (19) range six (6) east, Payne county, Oklahoma;

"Whereas, Parties of the second part secured the execution and signature of said contract by the Westerly Oil Company, and rendered valuable services to first party by reason thereof;

"Now, Therefore, In full payment for the services of second parties in securing said contract above mentioned from the Westerly Oil Company, the party of the first part hereby agrees and binds itself to pay to second parties the sum of five cents (5c) per barrel for each barrel of oil sold and delivered by Westerly Oil Company from said leases to the party of the first part herein.

"Payments to second parties shall be made on the succeeding day after the 1st and 18th of each month, and accompanying said payments shall be duplicates of the pipe line statements rendered to the Westerly Oil Company showing the exact amount of money which second party is entitled to receive.

"Witness the signature of the parties hereto, the day and date first above written.

"Yale Oil Refining Company,
                    "First Party.
"Attest:  Roy Willis (Seal)
              "By I. A. Tull, President,
              "J. C. Fowler,
              "Ben M. Curtis."

Defendant began taking oil from the two producers in January, 1917, and continued to do so up to May 15, 1917, at which time defendant sold its refinery plant, and canceled its contracts with the producers in order that the purchaser of the refinery plant might make contracts with such producers in its own behalf for the crude oil production. During the time from January to May 15, 1917, defendant paid to plaintiffs five cents per barrel on all crude oil delivered to its pipe lines by said producers, but aft-

er the sale of the plant, refused any further payment to plaintiffs, and this action was commenced to recover five cents per barrel upon all crude oil that could have been delivered to the defendant under its contracts with said producers for the remainder of the 12 month's period, alleged to be the sum of $10,000.

The parties will be hereafter referred to as plaintiffs and defendant, as they appeared in the lower court.

Sol. H. Kaufman and Chester H. Lowrey, for plaintiffs in error.

McCollum & McCollum, for defendant in error.

Opinion by LOGSDON, C. Only one question is presented for determination in this court, and that is whether or not the trial court erred as a matter of law in sustaining the demurrer of the defendant to the evidence of the plaintiffs. In reaching a correct determination of this question it is necessary only to determine the effect of the contract between the parties.

Plaintiffs in their petition first alleged an oral agreement on the part of the defendant to pay them the sum of five cents per barrel for all oil which plaintiffs procured to be delivered by producers to defendant, and in the brief and argument upon appeal it is contended by plaintiffs that this commission was intended by the parties to run contemporaneously with the contracts made between defendant and the producer, and for the full term thereof. However, after the contracts with the producers had been procured, reduced to writing, and executed by the parties, plaintiffs and defendant merged their oral agreement into a contract of writing, which has been heretofore set forth. It must be presumed that in reducing their contract to writing, plaintiffs and defendant expressed therein the entire agreement between them. There is nothing uncertain or ambiguous in the language used in the written agreement between the parties. It is expressly provided therein as follows:

"In full payment for the services of second party in securing said contract above mentioned from the Burke-Hoffeld Oil Company, the party of the first part hereby agrees and binds itself to pay to second party the sum of five cents per barrel for **each barrel of oil sold and delivered** by the the Burke-Hoffeld Oil Company from said lease **to the party of the first part herein."**

The other contract between the parties in reference to the Westerly Oil Company contract contains the identical language last above quoted, except as to the name of the producer and the description of the lease. The contract between defendant and Burke-Hoffeld Oil Company contained the following provision:

"In the case first party sells the above described lease, or in case it desires to enter the refining business and use the oil produced from the above lease, then this contract may be terminated upon thirty days' notice to second party."

It was further provided in that contract that in case of default in payment for oil by the defendant, the producer should have the right to declare the contract terminated by notifying the defendant thereof. Both the Burke-Hoffeld contract and the Westerly Oil Company contract provided that if the defendant failed to lay and connect its pipe line to receive the production during the month of January, 1917, that said contracts should be void.

These various provisions of the contracts between defendant and the producers were evidently known to the plaintiffs, who negotiated them, at the time of the execution of the contract sued on in this action. Plaintiffs, therefore, knew that those contracts might be terminated at any time by default upon the part of the defendant in paying for oil, or that they might never become operative by failure of the defendant to build and connect its pipe lines to receive the production. Under the Burke-Hoffeld contract, plaintiffs also knew that it might be terminated by the decision of the Burke-Hoffeld Oil Company to establish a refinery and use its own production therein. All of these conditions and exigencies were evidently in contemplation of the parties at the time of the execution of the contract sued on, and yet plaintiffs accepted a contract in full settlement of their services wherein it was expressly provided that they should receive "five cents per barrel for each barrel of oil sold and delivered * * * to the party of the first part herein," and this only. The elementary principle involved in the situation here presented is thus stated by Bishop in his work on Contracts (2nd Ed.) sec. 1415:

"In every judicial controversy under a contract, it, like the law, must be interpreted. And the interpreted contract, not the mere words of the bargaining, is what the court enforces."

This principle is expressed in statutory language in this state:

"The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations

or stipulations concerning its matter, which preceded or accompanied the execution of the instrument," Comp. Stats. 1921, section 5035.

There is no allegation or proof of mistake or fraud in the execution of this contract, and no allegation or proof that defendant acted with fraudulent or corrupt motive in the sale of its refinery, nor that sale was other than a **bona fide** transaction.

Counsel for plaintiffs admit in their brief that the theory of agency coupled with an interest is not presented by the facts shown in this record, so in the absence of language in the written agreement between the parties expressly or by necessary implication requiring defendant to continue its business during the term of the contracts with the producers, it was at liberty at any time to sell its refinery, provided the sale was made in good faith, and not for the purpose of defrauding plaintiffs.

Plaintiffs in error cite numerous authorities in their briefs, but a mere quoting of the legal proposition on which they are based refutes their application to the facts of this case. At page 11 of their brief they say:

"For instance, under a contract wherein a party contracts to buy from another all of a certain commodity he may need or require in his business, the courts imply an agreement on his part that he will continue in the business in which he is then engaged, and continue to use and need the commodity mentioned in the contract during the period covered. 23 R. C. L. 1266, sec. 83; Loudenback Fertilizer Co. v. Tenn. Phosphate Co., 121 Fed. 98, 58 C. C. A. 220, 61 L. R. A. 402; Hickey v. O'Brien, 123 Mich. 611, 82 N. W. 241, 81 A. S. R. 227, 49 L. R. A. 594; Wells v. Alexandre, 130 N. Y. 642, 29 N. E. 142, 15 L. R. A. 218."

In the case at bar the contract was not between the buyer and seller, and consequently no implied agreement enters into its terms.

Again, they use this language:

"If one party by his own acts prevents the measurement of the compensation to which the other party is entitled according to the method specified in the contract, that does not prevent the other party from resorting to other methods to establish as near as may be what the amount would probably have been. Humaston v. Am. Tel. Co., 20 Wall (U. S.) 20, 22 L. Ed. 279; Clark v. Westrope, 18 C. B. 765, 25 L. J. C. P. 287; Wells v. Alexandre, supra."

There is no prevention of the admeasurement of compensation in the instant case, because the contract expressly states the measure of compensation, and the record shows that payment was made according to the contract "for each barrel of oil sold and delivered * * * to the party of the first part" up to the date when the refinery changed hands.

"It is well settled by the authorities that whenever the statement of the consideration leaves the field of mere recital and enters into that of contract, as shown by the intention of the parties to be gathered from the instrument, it is no longer open to contradiction by parol evidence." McNinch v. Northwest Thresher Co., 23 Okla. 386 (sp. cit. 391), 100 Pac. 386.

In Guthrie & W. Ry. Co. v. Rhodes, 19 Okla. 21, 91 Pac. 1119, this applicable language is used:

"We take it the rule is well established that in the absence of any evidence of incapacity to read, or any trick or artifice resorted to to prevent his reading it, a party signing a written instrument that is plain and unequivocal in its terms is bound by its express terms and conditions therein contained, and that he cannot set up his own carelessness and his own indolence as a defense, and, because he failed to make use of the faculties possessed by him for determining its conditions, be heard to say that its terms or conditions should be other or different from what they are."

If plaintiffs intended that their compensation should be paid to them during the full term of one year they should have used apt language to express that intention. Their carelessness, indolence, or indifference cannot now be used to import ambiguity where none exists in the signed contract, nor to graft on the contract implied conditions repugnant to its clearly expressed terms.

The judgment of the trial court should be in all things affirmed.

By the Court: It is so ordered.