## PHILLIPS et al. v. HENDERSON GASOLINE CO.

No. 14871—Opinion Filed April 15, 1924.

(Syllabus.)

1. **Oil and Gas—Contract for Sale of Casinghead Gas Construed.**

The owners of oil and gas leases entered into a written contract for the sale of all casinghead gas, said contract providing, in substance, the owners of said leases should collect the gas from the well, install certain machinery, which consisted of vacuum pumps, drips, and scrubber tanks, and deliver the casinghead gas into the lines of the party of the second party, and further provided that the amount of gas delivered should be the amount passing through the meters, installed on the gas line of second party. Held, by construing said contract in accordance with sections 5044 and 5046, Comp. Stat. 1921, the title to the gas vested in the purchaser, as it passed through the meter; held, that under and by virtue of said contract, the purchaser was entitled to have the gas collected from the wells and transported through the line of the seller in the usual and customary manner, without passing through any unnecessary apparatus or machinery that would tend to extract from said gas any of its by-products.

2. **Same—Drip Gasoline not Included.**

By construing the contract according to section 5051, the contract of the parties did not extend to drip gasoline, that collected in the line, and had to be withdrawn before the same reached the meter.

3. **Contracts—Construction of Written Contracts.**

It is the duty of the court to construe contracts as written, and not to enlarge upon the contract and make new contracts for the parties regarding matter upon which their minds have not met.

4. **Appeal and Error—Review of Injunction Case—Sufficiency of Evidence—Contract for Sale of Casinghead Gas.**

The finding of the trial court that the drip on the Grimmett lease was unnecessary, and placed upon said lease for the purpose of extracting certain products from the gas, is not clearly against the weight of the evidence, and should be affirmed, and plaintiff enjoined from maintaining said drip.

Error from District Court, Nowata County; C. H. Baskin, Judge.

Action by W. G. Phillips and another against the Henderson Gasoline Company. Judgment for defendant, and plaintiffs bring error. Reversed and remanded.

Humphrey & Campbell, for plaintiffs in error.

Grinstead, Scott. Hamilton & Gross and Glass & Calvert, for defendant in error.

McNEILL, J. On October 1, 1915, Charles Harter and A. J. Thompson, the owners of oil and gas leases on four separate tracts of land in Nowata county, entered into a contract with the Henderson Gasoline Company, a corporation, to sell said company all the casinghead gas produced from said lease. The contract is very lengthy, but a few of the provisions necessary for consideration are as follows:

"The parties of the first part for and in consideration of the sum of one dollar *** do hereby bargain, grant and sell unto the party of the second part all of the casinghead gas produced from oil wells located on the hereinafter described real estate. * * *

"2nd. The party of the second part shall have the use of said gas for a period of five years from date hereof, and as long as gas can be profitably produced from said leases. * * * * The gas shall be delivered into the lines of the party of the second part at the gas pump or pumps which have been or will be installed by the said parties of the first part.

"3rd. The said second party agrees to use the said gas supply according to the terms and conditions of this contract and to pay therefor four cents per thousand cubic feet at a pressure of four ounces per square inch.***

"4th. It is mutually agreed by and between the parties hereto that the amount of gas delivered by said first parties to the said second party shall be determined by connecting a meter of standard make equipped with standard vacuum and recording gauge, and all in perfect condition and working order, to intake line of the said second party running to gas pumps of the said first party."

The contract further provides if any controversy arises over the construction of the contract, the same shall be submitted to arbitration for settlement. The contract then contains the following provision:

"To the faithful performance of each and

every term and condition of this contract, we bind ourselves, our legal representatives, successors and assigns, firmly by these presents."

On the 14th of January, 1916, a supplemental contract was entered into, but neither party relies upon the same as changing the rights of the parties under the original contract. On the 1st of November, 1917, Harter and Thompson assigned their oil and gas leases to W. G. Phillips and J. B. Milam.

During the year 1920, Phillips and Milam made certain changes in their equipment on the leases and installed new vacuum pumps, scrubbers, and drips. The pumps, scrubbers, and drips were installed on the portion of the gas line belonging to Phillips and Milam and between the wells and the intake gas line belonging to defendant. The meter where the gas was measured was installed on the intake line of defendants about a distance of some several hundred feet from the scrubber.

The scrubbers and drips were installed for the purpose of permitting water, waste, and other impurities from the gas to collect in the same, which are then drained out of the line. During the winter months a great deal of "condensate" or "drip gasoline" accumulated in the scrubbers or drips, along with the water or other waste, and this condensate or drip gasoline accumulated in sufficient quantities to be valuable and is drained out of the scrubbers or drips with water and other waste products. Phillips and Milam on the two tracts of land referred to as the Grimmett lease collected the drip gasoline that accumulated in the scrubbers and drip on this lease, and disposed of the drip gasoline. **On the other two tracts** of land, referred to as the Howerton lease, this drip gasoline was collected by the Henderson people and sold by them. Phillips and Milam contend **that the drip** gasoline belongs to them, contending the same was not covered by the contract, and was not within the contemplation of the parties at the time of entering into the contract. The defendant company, however, contends that under the contract it purchased all the casinghead gas, and this being a portion of the casinghead gas, the same belongs to them, although they concede the same never goes through the meter, nor can it be measured by a meter, nor have they paid for the **same.**

Phillips and Milam commenced this action in 1921, asking that the entire contract be declared null and void; (2) if the contract was not declared null and void, that the "condensate," or "drip gasoline," be decreed to belong to them and the defendant

company be enjoined from interfering with the plaintiffs in collecting and disposing of the same; and pray judgment against the defendant company for the value of the "drip gasoline" already taken by said company and not paid for. The defendant answered, contending under the contract that it is entitled to all the casinghead gas, and the drip gasoline being a part of the casinghead gas, the same belongs to it, and asks that the plaintiffs be enjoined from collecting any of the "drip gasoline," and further alleges that the drip on the Grimmett lease was unnecessary, and was installed for the sole purpose of extracting the rich by-products from the casinghead gas, and asks judgment against the plaintiffs for the drip gasoline collected by the plaintiffs.

The court in the second paragraph of the findings stated:

"The court finds that the only proper construction to be put on the contract to make it equitable and a workable agreement, is to hold that the plaintiffs intended to sell and deliver, and the defendant company intended to buy, all of the casinghead gas that should be produced on the premises described in the contract, whether such gas should be put in the pipe lines or mains in vaporous form or in liquid form."

In the fourth paragraph, the court stated:

"That the substance known as 'condensate', or 'drip,' is nothing more nor less than casinghead gas or vaporous gas liquefied by heating through friction, and then cooling, and should in this case go to and become the property of the defendant under the contract, to be paid for according to the terms of the contract, which can and must be determined by calculation, allowing the required number of cubic feet to each liquid gallon of the commodity produced."

The court further found that the plaintiffs should be permanently enjoined from taking possesison of any drip or from interfering with the company's proper handling of the same under the contract. The journal entry contains other recitals as follows:

"The court finds the casinghead gas produced from the wells of the plaintiffs can be accurately metered and measured by meter of standard make at the point of delivery of said gas coming into defendant's lines, and that the defendant herein is entitled to locate its meters at any place along its lines that it may choose to locate them, and the plaintiffs herein have no right to dictate or direct a location of said meters."

The journal entry further recites:

"That on the Howerton farm plaintiffs have installed their scrubber tank as related to and in connection with their vacuum pump, at the distance from their vacuum

pump, and in the usual and proper manner, and in accordance with the custom in vogue in the oil fields; but that on the Grimmett farm said plaintiffs have installed their scrubber tanks in an unusual manner and at a considerable distance from the vacuum pump, and have installed a drip or apparatus consisting of an eight and a quarter inch cylinder, sixty six feet long, through a portion of which the gas from said vacuum pump is passed before going into the scrubber, and that if such scrubber is intalled on the Grimmett farm as it is on the Howerton farm, that all of the casinghead gas will pass through the scrubber and can be metered while warm, on the intake line of the defendant company before condensation takes place; and said plaintiffs should be permanently enjoined from maintaining said drip on the Grimmett farm, and said scrubber tank should be located in the same manner as the scrubber tank is located on the Howerton farm."

We will first consider whether the court p'aced the proper construction upon the contract. In considering this question, there are certain well-known statutory provisions relating to interpretation of contracts that must guide the court in determining the same, being article 3, chapter 32, Comp. Stat. 1921. Section 5044 reads as follows:

"The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others."

Section 5046 provides as follows:

"A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable and capable of being carried into effect, if it can be done without violating the intention of the parties."

Section 5051 reads as follows:

"However broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract."

The first portion of the contract recites that defendant is purchasing all of the casinghead gas of the plaintiffs, and that plaintiffs should install certain machinery or equipment, which in the instant case was certain gas lines, vacuum pumps, scrubbers and drips, and the gas then delivered to the gas line of the defendant. The contract then provides that it is mutually agreed that the amount of casinghead gas to be paid for shall be determined by connecting meters to intake lines of second party running to gas pumps of said first party. By construing these provisions together, what was the intent of the parties? The language and intent as derived from the contract was:

1st. That plaintiffs were desirous of selling their casinghead gas and the defendant was desirous of purchasing the same.

2nd. It was contemplated that the casinghead gas should be gathered or taken from the wells and pass through certain gas lines and apparatus, then into the line of defendant, where a meter was to be installed. The amount of casinghead gas passing through the meter was to be paid for at so much per thousand cubic feet. It is clear that plaintiffs were selling what passed through the meter, and the defendant was buying and paying for what passed through the meter. It also is clear that the parties contemplated that the gas should be generated from the wells in the usual and customary manner, and run through the apparatus or machinery that is usually and customarily installed in accordance with the custom in vogue in the oil fields. It would follow that all leakage, shrinkage, or waste removed from the gas in passing from the wells to the meter would be borne by the plaintiffs; all leakage, shrinkage, or waste after passing through the meter should be borne by the defendant. It would also follow that if there was value to the waste products that was necessary to be removed from the gas between the wells and meter, the same would belong to the plaintiffs, as it does not pass through the meter and is not measured by the meter, nor does the contract contain any provision regarding this waste product. If the parties made no contract regarding the waste product, then by construing the contract in accordance with section 5051, Comp. Stat. 1921, the contract would not extend to this subject-matter.

We will now consider the location of the equipment upon the Howerton lease. The evidence disclosed that the gas line of plaintiffs is connected with the casinghead at the well. The casinghead gas passes through the gas lines connected to the wells into a large line, then into a vacuum plant, and from the vacuum pump through the scrubber tank, then to the defendant's line that connects therewith. The meter is located some several hundred feet on defendant's lines away from the scrubber tank, and between the scrubber tank and the meter a drip is installed. Scrubber tanks are of various sizes and are used for the purpose of removing from the casinghead gas water and other impurities. The drip is also used for the same purpose.

As to what accumulated in the drip, one witness testified as follows: There is water, drip gas, sometimes rust, and rusty settlement from the pipe. This same witness further testified that in the summer time the accumulation contained in the drip was gas, but not usable, but was rusty, oily, and was drawn off with the water. The evidence

further disclosed that in cooler months sufficient drip gasoline accumulates in the drip with the water and other sediment to be usable, and for about six months in the year it would amount on an average to about 25 gallons of drip gasoline a day. Witness was further asked what would happen to the meter or the line if this foreign substance was not taken out before it reached the meter, and he answered it would evidently clog the line until the meter could not register.

On the Grimmett lease there are two scrubbers located some distance apart and between the scrubbers is a drip and about the same amount of drip gasoline accumulates in the scrubber and in the, drip during the cooler months. The evidence disclosed that no drip gasoline accumulates in the scrubber on the Howerton lease, but the drip gasoline all accumulates in the drip. Under this state of facts, we think the court, first, misconstrued the contract in holding that under the contract the, parties contemplated a sale of all the casinghead gas, whether in vaporous or in liquid form. There is nothing in the contract to even infer that the parties intended to purchase casinghead gasoline in liquid form, but to the contrary they were purchasing what was delivered through the meter in vaporous form. The court attempted to make a contract between the plaintiff and defendant regarding the drip gasoline and fix the manner of measuring the same and how it should be paid for by the defendant. In this the court committed error. The court should have construed the contract just as it is written, the defendant buying all the casinghead gas as it was delivered through the meter. This is what defendant was paying for, and this is what it was to receive. It is the duty of the court to construe the contract as written, and not to attempt to make a new contract for the parties.

We will next consider the finding of the trial court upon the question of requiring the plaintiffs to remove the drip between the two scrubber tanks upon the Grimmett lease. The court found that this drip was unnecessary and ordered it removed. While this question is not treated and considered separately in the brief, and there is no specific assignment that the finding is clearly against the weight of the evidence, we are of the opinion the finding is not clearly against the weight of the evidence. The rights of the parties under the contract are plain and easily defined. The defendant is entitled to have the gas pass from the well to the meter without any unnecessary drips, or unnecessary scrubber tanks, that have a tendency to lessen the value of the casinghead gas.

Upon the question of the location of the meter, as to where the same might be located, the court found the defendant had a right to locate it any place on its line it saw fit. We think this is true. provided it is located at a point where it properly measures the gas. There is evidence in the record that a meter located too close to the scrubber tank or the vacuum pump will fail to properly register the amount of gas passing through the meter, by reason of the vibration of the vacuum pump. The location of the meter should not be determined by expert opinion, but should be determined by actual test. The defendant has a right to locate the same as close to the scrubber tank as they see fit, provided it properly registers the gas passing through the meter. Having reached this conclusion, it is unnecessary to consider the other questions argued in the brief.

The parties in the lower court stipulated that the question of accounting might be delayed until after the determination of the appeal. Having concluded the contract is valid and binding between the parties, the accounting should be had in accordance with the views herein expressed. Upon the Howerton lease the court found as a fact that the lease was being operated in the usual and customary manner, and neither of the parties contend there is any unnecessary drips installed, or that the scrubber tank is not properly installed. As to that lease the defendant should account to the plaintiffs for the actual value of the drip gasoline collected by them. As to the Grimmett lease, the court found the equipment is not properly installed and that two scrubbers were installed on said lease and the drip installed between the scrubber tanks for the purpose of extracting the rich by-products from the casinghead gas. The plaintiffs should account to the defendant for the excess, if any, of the drip gasoline that was collected by reason of installing unnecessary machinery and drips for the purpose of collecting drip gasoline; in other words, the plaintiffs were entitled to the drip gasoline that would accumulate under ordinary conditions, but must account for the excess that they have received, if any. The finding of the court that the extra equipment on the Grimmett lease should be removed is approved.

For the reasons stated, the judgment of the court is reversed and remanded for further proceedings not inconsistent with the views herein expressed.

JOHNSON, C. J., and ·NICHOLSON, COCHRAN, HARRISON, and WARREN, JJ., concur.