## SMITH et al. v. FIRST NAT. BANK OF ENID.

No. 21633.   Jan. 23, 1934.

Rehearing Denied Feb. 27, 1934.

Luttrell & Holland, for plaintiffs in error.

H. G. McKeever and W. L. Moore, for defendant in error.

RILEY, C. J.  On May 14, 1926, one L. B. Edwards entered into a written contract with plaintiffs in error, Roy M. Smith and C. E. Kahle, for the exchange of certain real and personal property.  Therein Edwards was designated party of the first part and Smith and Kahle were designated as parties of the second part.  Thereby party of the first part agreed to sell and convey unto parties of the second part all the capital stock of the Fairview Hardware Company, a corporation of Fairview, Okla., and transfer the same on the books as designated by the second parties, and to furnish second parties with a sworn statement of all the creditors of the corporation. First party also agreed to transfer to second parties all the stock of merchandise (of said hardware company) at invoice to be taken upon the then market value thereof plus 10 per cent., and also all fixtures, except one desk, one adding machine, one multigraph, and all accounts and bills receivable, the fixtures to be transferred at a value of $2,500, and first party was to operate the store in the usual course, giving second parties time to notify all creditors of the corporation.

The contract further provided that first party was to convey to the Fairview Hardware Company certain real estate, consisting of lots 17 and 18, in block 84, original town of Fairview, subject to a balance to the Fairview Building & Loan Association of $6,041.83; lots 9, 10, 11, and 12, block 48 of said town subject to the balance of a loan of said building and loan association of $1,916; and lots 19, 20, and 21, in block 84, of said town free and clear of all incumbrances; also to convey to said corporation a building located on the east 50 feet of lots 13, 14, and 15, block 85, of the original town of Fairview.  The contract provided:

"The consideration of the above-described property for the purpose of making a settlement of this contract shall be $24,500, plus invoice value as above stated on the stock and $2,500 for fixtures."

Second parties, in consideration of the above, in said contract agreed to grant, sell, and convey to first party lots 20, 21, 22, 23, block 1, E. University addition to the city of Norman, Okla., subject to a first mortgage, the balance of which was stated as $24,200, and subject to a second mortgage, the balance of which was stated as $800.  The contract then provided:

"For the purpose of settlement of this contract the value of the property located at Norman shall be considered as $45,000, and whatever difference there is due the party of the first part shall be due and payable as follows:

"$3,000 on September 1, 1926, the additional balance to be divided equally in two notes, one of which shall be due Jan. 1, 1927, and one May 1, 1927, the same be secured by a second mortgage given by the Fairview Hdw. Co., a corporation, to L. P. Edwards covering lots seventeen (17) and eighteen (18) in block eighty-four (84) and lots nine (9), ten (10), eleven (11) and twelve (12) in block forty-eight (48) in Fairview, Major county, Okla., said notes to bear 8% interest from date of execution, and first mortgage on lots nineteen (19), twenty (20), twenty-

one (21) block eighty-four (84) original town of Fairview, Okla."

The contract then provided that each party should furnish to the other abstracts and for the transfer of insurance. It then provided for the selection of representatives to assist in taking the invoice of the stock of merchandise, and then provided:

"It is further agreed and understood that the parties hereto shall place the deeds to their respective property in escrow with King G. Price at Norman, Okla., with instructions to him to deliver the same when the above conditions are complied with and in the case either party fails to deliver hereto he is instructed to hold the deed to the property until the said defaulting party shall pay to the other party the sum of $1,000, which is agreed upon as being a fair and proper amount of liquidated damages, and party failing to comply shall be liable for all commission."

The invoice of the stock of merchandise was taken as provided in the contract, and completed on or about May 28, 1926. Thereby it was ascertained that the balance to become payable to Edwards was $12,797.88.

In the meantime, apparently by mutual consent, a part of the real property which Edwards had, by the contract, agreed to convey to the hardware company had been sold to a third party for $1,000 and the money paid to Edwards, whereby the balance to become payable to him under said contract was reduced to $11,797.88. Whether or not deeds were signed by the parties and placed in escrow with King Price does not clearly appear, but, on May 29, 1926, the parties met in the office of John Butler, who represented Edwards in the matter, and deeds were executed and delivered by Edwards conveying the balance of the property he had agreed to convey to the hardware company, and deed to the Norman property was executed by Smith and Kahle and delivered to Edwards.

All the stock of the hardware company was transferred on the books of the company to parties designated by Roy M. Smith and Kahle, as follows:

50 Shares to E. D. Smith, a brother of Roy M. Smith;

60 Shares to T. S. Connally, an attorney of Oklahoma City;

10 Shares to one H. C. Greer.

Thereupon a note, dated May 29, 1926, in the sum of $3,000, due September 1, 1926, with interest at 10 per cent. per annum payable to the order of L. P. Edwards was made, executed, and delivered by the hardware company to Edwards, and also a note

in the sum of $3,898.09, of the same date. due and payable on January 1, 1927, with interest at ten per cent. from date, and a note of like date with like rate of interest, due May 1, 1927, in the sum of $4,898.94.

At the same time the Fairview Hardware Company made, executed, and delivered to Edwards a mortgage covering lots 19, 20, and 21, block 84, and lots 17 and 18, block 84, in Fairview, subject to a mortgage of $7,000, to secure the three notes above mentioned. Edwards also executed a bill of sale to Roy M. Smith and C. E. Kahle covering the stock of merchandise. Shortly thereafter Edwards, being indebted to the First National Bank of Enid, Okla., indorsed said notes and assigned said mortgage to said bank. He also delivered the contract above mentioned to the bank.

Thereafter, on September 25, 1926, nothing having been paid, the bank commenced this action against Smith, Kahle, the Fairview Hardware Company, L. P. Edwards, and one W. H. Thorne, doing business as the Thorne Hardware Company.

The petition in substance is against Roy M. Smith and C. E. Kahle, upon the contract, claiming in substance that by the contract Roy M. Smith and C. E. Kahle became liable and bound to pay to L. P. Edwards the amount ascertained by the invoice, and the value placed by the parties upon the property described, to be payable to Edwards, or the ascertained difference in value between the property transferred by Edwards and that transferred by Roy M. Smith and C. E. Kahle to Edwards, viz., $11,797.87; against the Fairview Hardware Company, upon the notes and mortgages given by it, and for foreclosure of the mortgage, and against W. H. Thorne, upon the grounds, as alleged, that Roy M. Smith and C. E. Kahle, without the knowledge and consent of plaintiff, had transferred all of said stock of merchandise to defendant Thorne, and without paying their indebtedness to plaintiff; and against Edwards upon his indorsement of the three promissory notes. A demurrer to the petition by defendant Thorne was sustained and the action was dismissed as to him.

After special appearance and unsuccessful motion to quash service of summons upon the defendants, Roy M. Smith and C. E. Kahle filed separate demurrers to the petition, which being overruled they answered by general denial, admitting, however, the execution of the contract by them and the notes and mortgage by the Fairview Hard-

ware Company, and further alleged that at the time of the execution and delivery of the notes and mortgages by the hardware company, same were executed as, and accepted by defendant L. P. Edwards in full and complete satisfaction of the indebtedness due him and the amount owing him under said contract.

Plaintiff replied by general denial, and the cause was tried to the court without a jury, resulting in a judgment in favor of the bank and against defendants Roy M. Smith and C. E. Kahle, upon the contract, in the sum of $14,463.89, the same being for the principal sum of $11,766.89, with accrued interest at the rate of six per cent. per annum, and against the Fairview Hardware Company, on the notes, in the sum of $16,242.14, the same being for the principal sum of $11,796.03, with accrued interest thereon at the rate of ten per cent. per annum as provided in said notes and for the further sum of $900, attorney's fee, as provided in said notes, and for foreclosure of the mortgage lien. The court found:

"That said notes and the mortgage to secure the same were given as security for the performance of the terms of the original contract sued on made and entered into by and between the said L. P. Edwards and the defendants Roy M. Smith and C. E. Kahle, who purchased from the said L. P. Edwards the stock in the Fairview Hardware Company as set forth in said original contract."

No judgment appears to have been rendered against defendant L. P. Edwards. The Fairview Hardware Company filed no motion for new trial, and the judgment as against it is not appealed from.

Defendants Roy M. Smith and C. E. Kahle prosecute this appeal.

The action was brought in the district court of Major county, that being the county where the property covered by the mortgage is situated. Summons as to defendant Kahle was directed to the sheriff of Oklahoma county, and was served upon said defendant in that county. Summons as to defendant Roy M. Smith was directed to the sheriff of Cleveland county, and was served upon said defendant in that county.

The special appearance and separate motions of defendants Smith and Kahle to quash the summons are upon the ground that the petition showed upon its face that the alleged cause of action against them was not such that plaintiff was entitled to join same with the action against the other defendants brought in Major county, they being residents of Oklahoma and Cleveland counties, respectively.

It is first urged that the court erred in overruling the motions to quash as to said defendants. It must be conceded that the action upon the notes and to foreclose the mortgage was properly brought in Major county.

In view of the judgment rendered by the court, there is probably some merit in the contention, but we deem it better, in view of the record, to consider the cause on its merits rather than on that jurisdictional question.

The theory upon which the case was tried was clearly stated by the attorneys at the beginning of the trial. Plaintiff's attorney stated that the theory of plaintiff was that the notes and mortgage of the Fairview Hardware Company were in the nature of collateral security to the debt of Smith and Kahle claimed to be due to Edwards as the balance payable to him under the contract pleaded. The theory of defendants Smith and Kahle was stated to be, as alleged in their answer, that the notes and mortgage of the Fairview Hardware Company were executed, and accepted by Edwards, as full and complete satisfaction of the amount ascertained to be payable to Edwards under said contract. In other words, defendants contended that the contract was fully executed on May 29, 1926, when deeds were exchanged and the property delivered by each party to the contract; and that the notes were given by the Fairview Hardware Company, and accepted by Edwards, as and in full completion and execution of the contract, and it was contended by plaintiff that the obligation of Smith and Kahle to pay the amount ascertained to be payable to Edwards under the contract was not released and satisfied by the acceptance of the notes of the hardware company secured by the mortgage, but that said liability continued and the notes and mortgage were only given and accepted by Edwards as collateral security for the payment thereof. In fact, this was substantially the only issue presented to the court.

It is earnestly contended that the judgment of the court is not sustained by the evidence.

The contract out of which this action arose was drawn by John Butler, an attorney. He represented Mr. Edwards in the matter, and testified as a witness for plaintiff. If there be any ambiguity in the contract, it is attributable to Mr. Edwards, under whom the plaintiff acquired its interest.

There is no contention that the contract

was not carried out in its entirety according to the provisions thereof, except with reference to the payment of the amount ascertained to be payable to Edwards and the execution of the notes. Edwards assigned or caused to be assigned all the capital stock of the hardware company in blank, and it was transferred on the books of the company to the parties designated by Smith and Kahle, as was their right under the contract. Edwards also conveyed to the hardware company all the real estate and property he agreed to convey, except, as stated, that part which was sold to a third party, and of which there is no controversy. It is conceded that he, Edwards, received the proceeds thereof, $1,000, and that one of the notes to be given under the contract was reduced in that amount. The invoice of the stock of merchandise appears to have been taken in the manner provided by the contract. There appears to be no controversy as to the correctness of the invoice, nor that the amount thereof, plus the 10 per cent. carrying charges, when added to the value agreed upon of the other property conveyed by Edwards, correctly reflected the amount payable to Edwards. Edwards also executed a bill of sale for the stock of merchandise to Smith and Kahle; all the property was thereafter delivered by Edwards in accordance with the contract. Smith and Kahle never did pay to Edwards the $3,000 made payable to him under the contract on September 1, 1929. Neither did they execute their notes to him for the balance payable January 1, and May 1, 1927. Instead, the Fairview Hardware Company executed its three notes for the whole amount and the mortgage on the property agreed in the contract to be mortgaged to secure the balance.

It will be observed that, while the contract provides that all the amount to become payable to Edwards, except possibly the first $3,000, was to be represented by promissory notes to be secured by a mortgage of the hardware company, the contract does not specifically provide who was to sign the notes. When the transfer was actually made, the whole amount was represented by the three notes sued upon.

Mr. Edwards testified, in substance, that when the notes were prepared, he objected to any one signing them except Roy M. Smith and C. E. Kahle; that they declined to sign them, and that Kahle gave as his excuse that his name on the contract was sufficient.

Mr. Butler testified, in substance, that he represented Mr. Edwards in the deal, and drew the contract in question. That he attempted to put in the contract the whole agreement of the parties and did so as he understood the agreement. He also testified that there were some three or four contracts prepared, which for some reason did not meet with the approval of the parties, before the last final contract was prepared by him and signed by the parties.

He testified that, on May 29, 1926, the parties all met in his office for the purpose of finally consummating or closing up the provisions of the contract; that the notes and mortgage were prepared on his typewriter; that he insisted that Roy M. Smith and C. E. Kahle should sign the notes; that Kahle positively refused, and that he then called their attention to the fact that the contract was not being carried out, whereupon Kahle said that if his name on the contract was not good for the amount thereof, they might call the deal off; that finally the notes were executed by the hardware company along with the mortgage, but that the notes and mortgage were not given as payment, but were given as collateral security.

A Mr. Dudley, who assisted in taking the invoice, also testified in substance that he heard Kahle refuse to sign the notes, and that he heard Kahle state that if his name was not good on the contract, then he would call the deal off. As a whole, the evidence of plaintiff was to the effect that Kahle, while refusing to sign the notes, told them that if his name was not good on the contract, then they would call the deal off, or, in substance, that Kahle had in effect agreed that the contract should stand and remain as evidence of his liability to pay Edwards the amount ascertained to be payable to him. And that Edwards then accepted the notes of the hardware company secured by the mortgage only as additional collateral security. There appears to be no evidence whatever that Smith agreed to this arrangement. But it is equally clear that he refused to sign the notes.

Mr. Kahle testified, in substance, that he was never to become personally liable on the notes. That Edwards so understood it. That he refused to sign the notes for the reason that the contract did not so require. That the notes were given and accepted in full compliance with and in consummation of the contract. That Butler and Edwards did request him to sign the notes; that he refused and told them that he was not to become personally responsible for the payment of the sum represented by the notes, and that if he was required to sign said

rotes, then he would call the deal off; that he never agreed or stated that the contract should stand as evidence of his liability.

Mr. E. D. Smith testified, without objection, that Butler had drawn some two or three contracts between the parties concerning the deal that were not signed before the final draft that was signed was prepared. That at least one of these contracts prepared by Butler provided that Roy M. Smith and C. E. Kahle should and would sign the notes to be secured by the hardware company's mortgage; that Smith and Kahle refused to sign the contract on that account, and that they told Edwards and Butler at the time they, Roy M. Smith and Kahle, did not intend to, and would not become personally liable and would not sign any contract that required them to execute the notes. It will be noted that this testimony stands undenied and uncontradicted. Butler admitted that he did draft some two or three contracts in an attempt to express in writing the agreement between the parties as he understood it, but they were rejected.

We are not unmindful of the rule that where preliminary negotiations are consummated by a written agreement, or an oral contract is evidenced by a subsequent memorandum in writing, the writing supersedes all previous understandings, and the intent of the parties is to be ascertained therefrom.

But in case of doubt as to the meaning of the written agreement, all the negotiations between the parties may be considered in giving the contract a construction. The contract is by no means clear in two respects: First, it does not specify whether or not the $3,000 to become payable September 1, 1926, was to be represented by a promissory note or merely by the contract itself. The parties, and particularly Edwards, construed the contract at the time to call for a promissory note representing the $3,000. His attorney prepared such a note for Smith and Kahle to sign. They refused to sign upon the alleged ground that they were not to become personally liable. The contract does not specifically provide that this $3,000 was to be secured by mortgage, either that of the hardware company or Smith and Kahle. Edwards and his attorney evidently construed the contract to mean that this note, as well as the two other notes, should be secured by the mortgage, for when the papers were prepared by Butler, this note was included as secured by the mortgage.

Furthermore, the contract does not specifically provide whether the two notes representing the amounts to become due and payable on January 1, and May 1, 1927, respectively, should be signed by Smith and Kahle or by the hardware company, although it did not provide that such notes were to be secured by the mortgage of the hardware company, covering the particular property, or part thereof, which Edwards agreed to convey to the hardware company. The implication is as strong that the contract called for the execution of these notes by the hardware company as it is that it called for the notes to be executed by Smith and Kahle.

It is quite clear from the record as a whole that Edwards and Butler, his attorney, were claiming that the contract called for the notes to be executed by Roy M. Smith and C. E. Kahle, while they contended that it called for the notes as well as the mortgage to be executed by the hardware company.

Therefore, when Smith and Kahle tendered the notes of the hardware company as in compliance with their contract, it was the duty of Edwards either to refuse to accept the notes as offered or accept them as they were offered. He had no right to accept the tender and prescribe any terms other than those upon which the tender was made. 12 C. J. 320.

If, as plaintiff contends, Edwards was entitled under the contract to have the notes of Smith and Kahle, when the notes of the hardware company were tendered to him, he did not have to accept. He could have stood upon the contract, and if Smith and Kahle refused to comply, he had his remedy by proper action.

In Burger v. First Nat. Bk. of Anthony (Kan.) 257 P. 979, it is held:

"When parties to a transaction differ as to how it should be settled, one of them contending it should be settled on one basis, the other contending it should be settled on another basis, and one proposes the settlement on the basis as he contends for, and the proposition is accepted, it is in legal substance a settlement. The fact that the party accepting does so complainingly avails him nothing. The effective way for him to protest such settlement is to decline the offer of settlement."

In Young v. Stephenson et al., 82 Okla. 239, 200 P. 225, it is held:

"Voluntary settlement between parties in respect to their rights, where all have the same knowledge or means of obtaining knowledge concerning the circumstances involving their rights, and there are no fraud, misrepresentations, concealments, or other

misleading incidents, are so favored that a settlement of their differences must stand and be enforced although the settlement made by the parties in their agreement might not be that which the court would have decreed to be, had the controversy been brought before it for decision."

Defendant in error has filed a brief containing some 30 pages, but not a single authority is cited therein, and we have found no authority tending to uphold the judgment of the court in any similar case.

The judgment against defendants Roy M. Smith and C. E. Kahle is against the clear weight of the evidence, and is contrary to law.

The judgment against defendants Roy M. Smith and C. E. Kahle is reversed.

CULLISON, V C. J., and McNEILL, OSBORN, and BUSBY, JJ., concur.