## MID-CONTINENT LIFE INS. CO. v. ATLAS LIFE INS. CO.

No. 25152.   Feb. 11, 1936.

24

Rittenhouse, Webster & Rittenhouse, for plaintiff in error.

Mo·n·t & Savage, for defendant in error.

BAYLESS, J. Atlas Life Insurance Company, defendant in error herein, as plaintiff, filed a suit in the district court of Tulsa county, Okla., against Mid-Continent Life Insurance Company, plaintiff in error, as defendant, on two causes of action based upon a contract of reinsurance between the parties. Judgment was for plaintiff on the second cause of action and for defendant on the first cause. Defendant then appealed and plaintiff cross-appealed.

We will consider the appeal on the second cause of action first. Plaintiff issued a policy of insurance to J. H. Morgan, on November 11, 1919, for $3,000. This policy contained a proviso for other benefits than ordinary life insurance. These will be considered later. October 28, 1924, plaintiff applied to defendant for reinsurance on this policy as to the ordinary life insurance provisions only. Plaintiff made no effort to reinsure the additional benefits. In 1928, Morgan became permanently totally disabled and plaintiff began paying him $204 per year for a period of 20 years. Plaintiff did not give defendant any notice of this and continued to pay to defendant the reinsurance premiums on the ordinary life insurance. Morgan died in 1931, after having received 3 of the 20 installments. Plaintiff thereupon issued to Morgan's widow, bene-

ficiary under said policy, a certificate evidencing her right to receive the remaining 17 installments as they fell due annually. Plaintiff then advised defendant of Morgan's death and demanded payment of the reinsurance. Defendant then learned of the facts; and denied liability and issued its check to plaintiff for the amount of the premiums it had received since 1928, which check plaintiff now holds.

The policy issued by plaintiff to Morgan read, in so far as it is material, as follows:

"Atlas Life Insurance Company, Tulsa, Oklahoma, agrees I, to pay Three Thousand Dollars (the face amount of this policy), upon receipt of due proof of the death of insured James H. Morgan, the insured, to Lettie S. Morgan (wife) Beneficiary (with right on the part of the Insured to change the Beneficiary) or II. Three Hundred Dollars annually for twelve years, in full settlement of this policy, beginning immediately upon receipt of due proof that the death of the beneficiary (provided there is not more than one and that such beneficiary be over sixteen and under sixty years of age at date of death) resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental means (excluding homicide or self-destruction, sane or insane; death caused directly or indirectly, wholly or partly, by war, riot or insurrection or any act incident thereto; death resulting from any violation of law or from military or naval service of any kind, or from police duty in any military, naval or police organization or death resulting directly or indirectly from bodily or mental infirmity, ptomaines, or bacterial infections) while riding as a passenger on any regular licensed public conveyance operated by an incorporated common carrier for passenger service only, submarine or aeronautic travel not included, and that such death resulted within sixty days after such accident; provided said death shall occur during the premium paying period of this policy and before the Insured shall attain the age of sixty years, and provided all premiums shall have been duly paid and said policy is then in full force and effect and is then surrendered properly released, or III, Two Hundred Four Dollars per annum for twenty years, if the insured becomes wholly and permanently disabled before age 60, subject to the terms, provisions, conditions and limitations contained in Section A thereof. * * *"

The Roman numerals in the above quotation were placed there by us for our own reference in later discussions.

"Section A. Permanent Total Disability.

"If the Insured shall furnish due proof that he has, within the premium paying

period, and before he shall have attained the age of 60 years and before a default in the payment of premium become wholly disabled by bodily injuries or disease, not occasioned by military or naval service and will be permanently, continuously and wholly prevented thereby for life from engaging in any gainful occupation, the Company will pay to him, during such disability and in full settlement of this policy, twenty annual installments—the first installment to be paid six months after receipt of due proof of permanent total disability as aforesaid. The amount of each such annual installment shall be six and eight-tenths per cent. of the face amount of this policy, provided, that if there be any indebtedness to the Company hereon, the amount of such annual installments on the basis of interest at the rate of 3½ per cent. per annum. The Insured shall not have the right to commute any installments becoming payable under this contract. If the Insured shall die during such disability and before 20 such annual installments shall have been paid, the installments will continue to be paid to the Beneficiary or Beneficiaries of the Insured until 20 installments in all, including those paid to the Insured, shall have been paid.

"Without prejudice to any other cause of permanent total disability, the entire and irrecoverable loss of the sight of both eyes, or the severance of both hands above the wrists, or the severance of both feet above the ankles, or one entire hand and one entire foot, shall be considered permanent total disability within the meaning of this provision."

The certificate issued to Morgan's widow reads as follows:

"In consideration and acceptance of proof of the total and permanent disability and death of James H. Morgan, and the receipt of Original policy No. 2231 duly surrendered to your company. The Atlas Life Insurance Company, Tulsa, Oklahoma, hereby agrees to pay at its Home Office in Tulsa, Oklahoma, to Mrs. Lettie Morgan of San Antonio, State of Texas, beneficiary under said original policy, $204 annually, for twenty years. The first payment has been made on the 19th day of September, 1928, and payments will be made each year thereafter until twenty payments, including the first shall have been made.

"If the said beneficiary should die before receiving twenty annual payments, the balance of such payments shall be made to the estate of said beneficiary.

"In accordance with the terms of original policy No. 2231, this certificate and the amount due thereunder are not commutable by the beneficiaries.

"In witness whereof, The Atlas Life Insurance Company has, by its Vice-President and Assistant Secretary, issued this contract at Tulsa, Oklahoma, this 16th day of June, 1931."

We also quote such portions of the contract of reinsurance as we consider material:

"When seeking reinsurance the Insuring Company shall submit to the Reinsuring Company, a written application, in duplicate, signed by its President, Secretary or other proper officer, which shall be in substance a form, as attached, marked 'Exhibit A'. This application shall set forth the initial 'Amount of Reinsurance' desired, the amount of insurance therefore issued on the life of the insured and the amount thereof carried by the Insuring Company, the amount then applied for on the life of the Insured and the amount thereof proposed to be carried by the Insuring Company.

"If the principal policy contains a total and permanent Disability Benefit Clause as set out in 'Exhibit C', hereto attached, the policy of reinsurance issued hereunder may provide for reinsurance of such part of said total and permanent Disability Benefit as the amount of reinsurance hereunder represents of the net amount on the principal policy. The annual premium for reinsurance of said total and permanent Disability Benefit shall be based on the age of the Insured at date of reinsurance with the attached table, marked 'Exhibit C', and provided said Disability Benefit is available only before the insured attains age sixty (60)."

(The provisions of Exhibit "C" above referred to are in substance those of sec. A of the policy heretofore quoted.)

"In case the Insuring Company shall charge an extra premium for extra risk to a person insured under any original insurance, the Reinsuring Company shall be entitled to its proportion of the extra premium charged.

"It is understood and agreed that policies issued pursuant to this Contract and in accordance with the schedule of premium set forth in the table of annual premiums for each $1,000 of reinsurance, shall not be considered to cover special risks not contemplated by the premium rates, such as Double Indemnity in case of accidental death, Total Disability Benefits other than waiver of premium and the like, but shall only apply to Ordinary and Single risks of death and to waiver of premiums in event of Total and permanent disability as described in the fifth provision hereof. Special risks shall be stipulated in the application and the premium rate adjusted accordingly."

The parties stipulated to the facts essential to this cause of action substantially as

26

stated by us. With the facts and the contracts before us, let us see what are the contentions.

Neither party contends that plaintiff reinsured the permanent total disability coverage of Morgan's policy, that is, No. III as controlled by sec. A of said policy, or that plaintiff ever paid defendant for such reinsurance; although it is admitted plaintiff had a right to apply therefor.

The plaintiff contends that the benefits represented by the certificate issued to Morgan's widow constituted life insurance paid pursuant to the first provision of the policy; that the occurrence of permanent total disability and the inception and continuance thereof during Morgan's life did not cancel the ordinary life insurance policy. Plaintiff presumably contends that Morgan's beneficiary was not entitled to both (and it did not pay double benefits); but it says that if the permanent total disability ceased during Morgan's life, the payments thereon also were to cease, and, therefore, the ordinary life coverage would be revived. Plaintiff contends that it continued to pay the reinsurance premiums in recognition of the likelihood of revival of the ordinary life coverage.

The defendant contends that the benefits under provision III of Morgan's policy (permanent total disability) constitute a scheme for the payment of the amount of the coverage of the policy separate, independent, and in lieu of death benefits under I and II. Defendant contends, in effect, that permanent total disability ripens the coverage, converts the policy into an "annuity contract," destroys the death coverage, and when payment is completed under the annuity plan the coverage of the policy or contract is completed. Defendant contends, in effect, that upon the coming into existence of the "annuity contract" obligation, the ordinary life policy ceased, that the reinsurance thereof lapsed, and it was not entitled to receive further premiums. Defendant contends that its acceptance of the premiums after 1928 was without knowledge of the change in Morgan's status, and that when it learned thereof it adopted a position in keeping with its interpretation of the reinsurance contract and in keeping with its legal contentions herein. The effect of this contention is to say it was not guilty of conduct which could be pleaded as estoppel. We agree with this contention.

Concerning plaintiff's contention that during Morgan's lifetime and after he had begun receiving permanent total disability payments there was a contingency of future change of status as to permanent total disability with a resulting change of legal obligations as between it, Morgan, and defendant, we have this to say, the change of status did not occur. We are called upon only to construe the contracts in the light of what has occurred. In addition, the policy of insurance apparently contains no express provisions relating to the legal effect of a cessation of permanent total disability, except to provide for the cessation of payments. We do not attempt to construe the insurance policy in this respect in this opinion.

The parties have not cited us the decisions of other courts upon the controversy, and both say they have been unable to find any. We have not found any directly in point. We must look to the rules of construction, and to the reasoning of the courts on analogous questions.

The general rule for the construction of contracts of reinsurance is stated in Couch's Cyc. Ins. Law, vol. 8, page 7390, sec. 2256:

"Reinsurance, as previously stated, is a contract whereby one for a consideration agrees to indemnify another, either in whole or in part, against loss or liability the risk of which the latter has assumed under a separate and distinct contract as insurer of a third party. With respect to the nature of the contract, it may safely be said that, although the decisions show a difference in many respects between the contract of insurance and one of reinsurance, as a matter of fact the latter involves no contracts generally. Furthermore, a contract of reinsurance does not necessarily differ in form from one of original insurance. Nor is it doubted that a contract of reinsurance, whatever it may be termed or however it may be designated, must be construed in the light of its provisions. It also is worthy of note that the contract is one not of guaranty, but of indemnity.

"Reinsurance was a valid contract at common law, and with the exception of a short period in England, when prohibited by statute under specified circumstances, has generally been regarded as a legitimate and valid contract, reinsurance now being commonly practised. Reinsurance also may be permitted by statute. For example, in Illinois the Legislature at an early date expressly conferred upon all insurance companies the power to reinsure their risks under certain conditions. And in Monitoba, under a statute provided that the board of a mutual fire insurance company may reinsure its risks on such conditions with respect to payment of premiums as the directors may agree upon, an agreement by one mutual company with the directors of another sim-

ilar company to reinsure such directors of all policies, assessments, rights to assessments, mortgages, and contracts, is valid without the consent or ratification of the members, since such a contract is one of reinsurance, and not a sale of the company's business. The New York insurance law also permits reinsurance of the whole or any part of any policy obligation in any other insurance corporation. Of course, if a statute requires that specified formalities be complied with, compliance is essential to the validity of the contract. Thus, where the statutes require the approval of the original policyholders, any contract made without such consent and approval is invalid. The legal right of insurance companies to enter into contracts to indemnify each other for portions of losses suffered by either, in the state of its domicile, and to perform such contracts therein, is governed by the law of that state, and not by the law of the state where the insured property is located."

While the insurance contract and reinsurance contract are separate, they bear a relation to each other, and the rule as to their effect upon each other is as stated in the work on Insurance, supra, vol. 8, page 7406, sec. 2262:

"The terms of the original policy may control the contract of reinsurance. Conversely, the reinsurance contract may be controlled by the terms of the original insurance. This is illustrated by a Pennsylvania case, where the duration did not mention when that period was to commence or terminate, the original insurance was for one year from February 24th, with privilege of renewing, and the reinsurance was taken out May 31st of the same year, and it was held that the reinsurance should be construed as running one year from February 24th, that being the date of commencement of the original risk, and that the reinsurer was liable, the death of the insured having occurred between February 24th and May 31st. So, a reinsurer which, by its contract, assumes the obligations of the original insurer, is bound by the automatic nonforfeiture clauses of the original policies. But whether the incontestable clause in the original policy becomes a part of the reinsurance policy is for the court to decide, where both policies are set out in the pleadings.

"Contracts of reinsurance may be made covering a different period of time from that covered by the original policy of insurance; that need not be coterminous. However, parol evidence is admissible to show that a reinsurance was intended to and does, cover the whole period of the original insurance."

In the case before us it cannot be doubted that the liability of defendant to plaintiff is controlled by and depends upon a construction of the insurance contract between plaintiff and Morgan. If the benefits Morgan's beneficiary received were death benefits paid to her by reason of plaintiff's obligation to her under provision I of the policy (so marked by us), plaintiff is entitled to recover, whereas, if such benefits were paid to her at Morgan's death, not on account of his death, but merely as a completion of its obligation under provision III, plaintiff is not entitled to recover. The effect of the contentions of the parties is to bring them into agreement as to the effect of the determination of this issue.

As we construe the policy, plaintiff obligated itself: (I) To pay Morgan's beneficiary $3,000 when he died, because of his death while insured; or (II) to pay Morgan $300 per year for 12 years when his beneficiary died, as conditioned; or (III) to pay him during his lifetime (and during disability) $204 per annum for 20 years, and to complete these 20 payments to his beneficiary if he died before receiving all of them. The word "or" is used throughout and in the distinctive sense. It will be noticed that under II and III it was stated that payment thereunder was in full settlement of the policy.

We believe the occurrence of any events upon which these provisions respectively operated, and the uninterrupted continuance of III if and when it occurred, operated to satisfy all of plaintiff's legal liability under the contract, and operated to cancel or terminate the remainder of the policy.

If we adopted plaintiff's construction of the policy, we would either have to say that every scheme of protection under the policy was ordinary life insurance, or say the permanent total disability benefits were an "annuity contract" during Morgan's life and transformed into ordinary life insurance upon his death because of his death.

Since defendant only reinsured plaintiff on ordinary life insurance, and since we have held that plaintiff did not pay ordinary life insurance under the policy, we must hold that the trial court erred in rendering judgment for the plaintiff on its second cause of action.

The first cause of action will now receive our attention.

The facts relating thereto were stipulated, except as to certain letters and testimony in explanation thereof, and may be stated to be substantially as follows: April 11, 1922,

plaintiff issued a policy of life insurance, No. 8652, for $5,000 to Robert E. Davis, and on April 10, 1923, issued to him a policy of life insurance, No. 10229, also for the sum of $5,-000. April 9, 1923, plaintiff applied to defendant for reinsurance in the sum of $5,-000, and this was granted. The reinsurance contract between plaintiff and defendant contained certain provisions pertinent to the issue and these are quoted later.

May 11, 1929, policy No. 8652 lapsed for nonpayment of premiums and under its terms it was extended for the full amount for a period of 124 days, or until September 12, 1929, at which time it terminated. July 10, 1929, policy No. 10229 lapsed for nonpayment of premiums and under its terms was extended in the full amount until March 2, 1930, but during this period and on November 27, 1929, Davis was killed. Plaintiff paid his beneficiary $5,000, the face of policy No. 10229, and demanded contribution from defendant on the reinsurance policy. Defendant learned of the termination of policy number 8652, and the lapsation of policy No. 10229, and its extension, whereupon it denied liability. The parties thereupon had some correspondence over their different views of defendant's liability to plaintiff, and this correspondence was closed by the defendant insisting it was liable only to return the premium and offering so to do, the plaintiff writing its acceptance of this offer, and the defendant sending plaintiff a check for the amount of the reinsurance premium paid by plaintiff after the termination of policy No. 8652.

The controversy between the parties as to this cause of action revolves around section 11, reinsurance contract, which reads as follows:

"Eleventh: (1) If the original insurance issued upon any life by the Insuring Company at the date of whose issue reinsurance thereon was sought and granted hereunder, is terminated, such reinsurance shall ipso facto terminate. If the original insurance is reduced, such reinsurance shall ipso facto be reduced (partially or entirely as the case may be) by the same amount as the net amount at risk under the original insurance is reduced; provided, however, that if such life is reinsured in two or more Companies the reinsurance issued hereunder shall be reduced only in the proportion that the total reduction in the gross amount of reinsurance issued in connection with such original insurance bear to the total original insurance. The Insuring Company shall be entitled to a refund of any unearned premium on reinsurance so terminated or reduced, such unearned premium to be calculated from the date of such termination or reduction."

"(II) If upon default in premium payment, the principal policy passes under extended or continued insurance on the paid-up term plan, the Insuring Company shall without delay notify the Reinsuring Company of the particulars, and return the reinsurance policy for cancellation. The reinsuring Company shall thereupon issue a new reinsurance policy, the amount of which shall bear to the net amount at risk under such extended or continued insurance, the same proportion that the amount of the original reinsurance bore to the net amount at risk under the principal policy, and the Insuring Company shall pay to the Reinsuring Company the annual premium required by the amount of said new reinsurance policy.

"(III) If after the principal policy has been terminated or has passed under extended or continued insurance, the Insured applies for the restoration of the same to full force, the original reinsurance shall be restored upon approval by the Reinsuring Company of the evidence of insurability upon which the Insuring Company proposes to restore the principal policy, and the payment of over-due premiums, if any, with interest at 5%."

The plaintiff contends that the facts above stated are controlled by paragraph II of said section 11 (marked II by us for reference). The defendant denies this, and says, further, that if this be true, the plaintiff failed to comply therewith and cannot maintain this action.

The defendant contends that the facts are controlled by paragraph I; that Policy No. 8652 is the "original insurance" spoken of therein, and, when it terminated, the reinsurance terminated. It contends, further, that when it learned of the true facts it denied liability, whereupon the parties entered into a controversy which was settled by them in accord with its contention, and it then paid back to plaintiff the reinsurance premiums which plaintiff had paid to it after policy No. 8652 terminated, and plaintiff kept them.

The issues presented to the trial court were these: (1) A construction of the contract of reinsurance and particularly section 11, which was an issue of law; (2) a determination of the compliance with the paragraph II thereof by the plaintiff, if said paragraph controlled, which was a question of law and procedure; and (3) whether the parties had compromised and settled, which was a mixed question of law and fact.

The judgment of the trial court on this

action at law (as distinguished from equity) was for the defendant, and was tried to the court without a jury. We are not justified in reversing it unless we can say the judgment is clearly contrary to law, or that there is no evidence reasonably tending to support the judgment.

We believe the judgment of the trial court on the third issue is controlling. It is clear to us from the record that the parties recognized the existence of a controversy between them. There was correspondence between them, and plaintiff called upon attorneys to write defendant as to plaintiff's position. Thereafter, and on October 27, 1930, defendant wrote to plaintiff as follows:

"On May 1, 1930, you indicated that you wished to make a further analysis of the above case and that you would write us further.

"We wonder if you had come to a definite conclusion in this matter.

"In the event that you agree that the liability is the unearned premium on our reinsurance policy from the date your policy No. 8652 expired, we will be very glad to have you give us this date and will immediately send you check for the unearned premium referred to."

On October 29, 1930, plaintiff answered this letter saying:

"Referring to your letter of October 27th to Mr. Johnson D. Hill, we wish to advise that our policy No. 8652 expired as of September 12th, 1929 and we will be glad to have your refund in the amount of $25.91."

Defendant accepted this offer by letter reading:

"We have yours of the 29th inst. advising that your No. 8652 expired on September 12th, 1929, and that the refund due under our policy amounts to $25.91.

"This appears to be the correct amount due on the premium for life insurance, but our records show that there is also an extra premium of $7.50 paid for disability reinsurance. Refund will be due on this item for the same period and we calculate the amount due you on the disability premium as $4.32, asking a total of $30.23.

"We shall appreciate it very much if you will return the original reinsurance schedule for cancellation."

The trial court was justified in finding and believing that the parties had compromised and settled their controversy in accord with defendant's contention, and that plaintiff could not thereafter sue on this cause of action.

The rule in Smith v. First National Bank, 167 Okla. 408, 29 P. (2d) 971, as follows:

"Where the parties to a written contract disagree as to its meaning and one party offers to perform according to his contention, and the other party accepts the offer and the contract is then carried into effect in accordance with such offer, it is in legal substance a settlement. The fact that the party accepting does so complainingly avails him nothing"

—applies here.

The judgment for defendant on the first cause of action was general. There were at least three grounds upon which it might have been rendered. If it was good as to one, it is good as to all.

Therefore, the judgment as to first cause is affirmed; and is reversed as to second cause; and the action is remanded to the trial court to be dismissed.

OSBORN, V. C. J., and RILEY, WELCH, CORN, and GIBSON, JJ., concur. McNEILL, C. J., and BUSBY and PHELPS, JJ., absent.