## FRANKS v. BRIDGEMAN.

No. 26498. Dec. 8, 1936.

Rehearing Denied January 9, 1937.

Dyer & Smith, for plaintiff in error.

Roy J. Elam, for defendant in error.

PER CURIAM. C. M. Bridgeman, as plaintiff in the lower court, filed an action to require Joseph Franks to account for the profits derived from a certain sheep-raising venture jointly engaged in by the parties over a period of approximately three years from 1931 to 1934. To this petition Franks filed an answer and cross-petition setting out certain mutual accounts between the parties and praying damages for the loss of certain sheep ·alleged to have been caused by the

negligence of Bridgeman, and further prayed for the return of certain personal property. At the time of trial it was agreed by both parties that at the close of the first year of the joint venture the defendant, Franks, owed the plaintiff, Bridgeman, the sum of $21.02. The court found that the plaintiff, Bridgeman, owed a balance of $9.67 to the defendant, Franks, as a result of the transactions covering the second year. No question is presented as to the judgment of the court covering the transactions of both the first and second years.

The parties were governed in their third year's transactions by a written contract, and since a construction of this contract is involved, we deem it advisable to set it out in full:

"State of Oklahoma, County of Garfield, ss.

"Agreement.

"1. This agreement made this 31st day of October, A. D., 1933, by and between Jos. Franks, hereinafter referred to as first party and C. M. Bridgeman, hereinafter referred to as Second Party, witnesseth:

"2. Whereas, first party is the owner of approximately six hundred (600) ewes, more or less, located about five (5) miles south of Perry, Noble County, Oklahoma, on land known as the Schneider Ranch, all of which have had or are to have lambs within thirty (30) days next after this date and,

"3. Whereas, said parties are desirous of entering into an agreement whereby said ewes and their lambs are to be fed for a period of time herein expressed.

"4. Now, therefore, the first party agrees to furnish said ewes and lambs to be dealt with as in this contract directed.

"5. It is mutually agreed by said parties that said ewes and lambs shall be moved from their present location to a place approximately one and one-half (1½) miles south of Shay, Garfield County, Oklahoma, and there kept for the period hereinafter expressed on yards to be furnished by said parties.

"6. That second party is to devote his entire time to the care, management and feeding of said ewes and lambs for the period hereinafter expressed.

"7. All expenses of acquiring feed, sheds, bedding, water and other necessary attention for the proper feeding and care of said lambs and ewes for the period herein expressed shall be advanced by first party, said second party to devote his time without compensation other than hereinafter expressed.

"8 It is mutually understood and agreed

that said ewes and lambs are to be kept and fed until the lambs are mature and ready for market during the spring of 1934.

"9. That when said lambs are sold after having been fed and prepared for market, there shall be deducted therefrom and paid to first party from the money received from the sale of said lambs, a sum sufficient to compensate him for all money advanced for feed and necessary veterinary expenses. The sum remaining shall be divided between first and second parties on a ratio of 50-50 or one-half each.

"10. It is mutually understood and agreed that all labor incident to the care and feeding of said sheep shall be borne by second party, and in the event first party advances any funds in the furtherance of this contract for such labor or to second party for his living expenses during the life of this contract the same shall be repaid to first party from the portion of profits herein accruing to the second party and said sum shall be a lien on the profits accruing to the second party under this contract.

"11. It is expressly agreed that ownership and title to said ewes and lambs shall be and remain in the first party and that the second party shall have no right, interest or title thereto.

"12. That first party shall direct the management and manner of care and feeding of said ewes and lambs during the life of this contract and shall determine the time of sale and that second party shall be compensated for his labor incident to the care of said sheep only by division of the net profits accruing to him from this contract under the provisions hereof.

"13. That this contract is in no sense a partnership agreement and it is further agreed that all the ewes mentioned in this contract shall be delivered back to first party at the beginning of the grass season 1934.

"Witness our hands this _____ day of October, A. D., 1933.

"Jos. Franks, party of the First Part.

"C. M. Bridgeman, party of the Second Part."

The record discloses that pursuant to this contract Franks delivered to Bridgeman approximately 585 ewes in October, 1933. Lambs were born during September, October, and November of the same year. These ewes and lambs were taken care of by Bridgeman from the time of their delivery to him until on or about February 23, 1934, at which time they were removed from Garfield county, Okla., to McFarland, Kan., and kept there in feed until some time during the early part of April when the lambs were then marketed in Kansas City and St. Joseph, Mo.

It was stipulated by counsel during the trial that the lambs brought $3,504.09 net after deducting the freight charges, yardage and commission, and it was further stipulated that the feed cost for both the ewes and lambs while in the feed yards at McFarland was $1,342.68.

Evidence was introduced by Bridgeman at the time of trial that he had made arrangements to take care of both the lambs and ewes in Garfield county until time for marketing the lambs as provided in the written contract, and that the total feed costs, from the time of their removal, if the ewes and lambs had remained in Garfield county, Okla., would have been approximately $160. Bridgeman introduced in evidence a letter dated February 22, 1934, addressed to Franks, evidencing his objection to the removal of the sheep from their location in Garfield county, protesting that he would not consider himself liable in the event of their removal for any expense incurred in the feeding of the ewes at McFarland, Kan., or for freight bill incurred in the shipment of the ewes from Garfield county to McFarland, Kan., but agreeing in substance to share the expense of feeding the lambs while at McFarland.

The court found from the evidence and upon its construction of paragraph 5 of the written contract that there had been a breach of the contract by Franks in removing the sheep from Garfield county, absolving Bridgeman from any liability for the feed bill for the ewes while at McFarland, but held that under the evidence Bridgeman should stand his share of the costs of feeding the lambs at McFarland.

The court found the amount of feed expense for the lambs at McFarland to be $537.08, which should be charged to the joint account of the parties. The court found further that $513.20 should be added to this joint account for feed costs expended by Bridgeman while the lambs and ewes were located in Garfield county. The court found that, after deducting the aggregate of the feed bills, amounting to $1,050.28, from the receipts from the sale of the lambs, the profits for the third year amounted to $2,453.81, of which Bridgeman was entitled to one-half, namely, $1,226.90. From this the court deducted $572.20, checked out by Bridgeman, and which had been advanced by Franks for his personal use and living expenses, $41.25 for oats used by Bridgeman for purposes not connected with the venture and which had been furnished by Franks, and $59.40 for 18 lost ewes, these deductions aggregat-

ing $672.85, leaving a net balance for the year in favor of Bridgeman from Franks amounting to $554.05.

The court further, in dividing certain properties, found that Bridgeman was entitled to the remaining portion of a shed constructed upon the property on which the sheep had been taken care of, the other portion having already been moved away by Franks and appropriated as his own.

Upon a final balancing of the accounts over a three-year period the court's final judgment was one in favor of Bridgeman against Franks in the sum of $565.40, obtained by adding $554.05 and $21.02, and deducting from this result $9.67, which figures have heretofore been set forth in this opinion.

Only two errors are complained of by the plaintiff in error, Franks:

(1) That the court erred in its construction of the written contract in holding that Franks breached the contract or was not justified in moving the lambs and ewes to McFarland, Kan.

(2) That the court erred in holding that the remaining portion of the shed left standing upon the location where the sheep had been taken care of belonged to the defendant in error, Bridgeman.

As to the first objection, if the trial court was in error and the contention of plaintiff in error should be sustained, then Bridgeman's share of the profits should be charged with the payment of one-half the feed expense for the ewes while at McFarland, namely, $402.80. If the trial court was correct in finding that Franks had breached the contract, then the total feed bill for the ewes while at McFarland will have to be absorbed by Franks.

The main contention raised by the plaintiff in error on this appeal is that paragraph 12 of the written contract gave Franks the sole and complete right to determine where the sheep should be kept during the duration of the joint venture.

In construing this contract this court is bound by the rule as announced in Prowant v. Sealy, 77 Okla. 244, 187 P. 235, which is as follows:

"The intention of the parties must be deduced from the entire agreement, not from any part or parts of it, and where a contract has several stipulations, the intention of the contracting parties is not expressed by any single clause or stipulation, but by every part and provision in it, which must all be considered together, and so construed as to be consistent with every other part."

We think the following statute, section 9465, O. S. 1931, is highly applicable and helpful in arriving at a proper construction of the contract under consideration:

"The whole of the contract is to be taken together so as to give effect to every part if reasonably practicable, each clause helping to interpret the others."

We must assume that the controverted paragraph 5 of the written contract was incorporated in the contract to serve some designed purpose and use. The place where the sheep were to be kept as specified in the contract may have been assigned a place of considerable importance in the consummation of this contract creating the joint venture. The greatly increased costs of taking care of and feeding the ewes at McFarland over that in Garfield county, as shown by the evidence, is a strong suggestion as to the importance of this provision of the contract to the parties. Certainly, it is not for us to say that it had no purpose or that such purpose was of no consequence and import. We cannot adopt a construction of the contract which would vitiate this paragraph as long as the contract is susceptible of a reasonable construction consistent with its existence. As stated in the case of Prowant v. Sealy, supra:

"We are not authorized to presume that the parties to the contract employed the words uselessly, but must presume that they were used designedly and for some purpose; otherwise, they would not have been incorporated in the agreement. * * * The rule that effect should be given, if possible, to all parts of a contract, is generally applied by all the courts, and we cannot reject this part of the contract if the words will admit of any reasonable and practicable construction that will sustain them as an essential part of the agreement. As stated in State ex rel. Davis v. Mortensen (69 Neb. 376) supra, a construction that will completely emasculate a clause of a contract will not be adopted, if any other reasonable construction is admissible."

The trial court evidently found that paragraph 12 of the contract, when construed in connection with paragraph 5, did not purport to give Franks the sole and unlimited right to remove the sheep from their location in Garfield county, but merely conferred upon Franks the right to direct the management and manner of care and feeding of the sheep while on location in Garfield county, as provided in the contract. We think this construction is a reasonable one and consistent with the existence of both paragraphs 12 and 5.

The plaintiff in error complains that even

560

though Franks was not within the contract in removing the sheep to McFarland, the acts of Bridgeman in using for his own use $572.20 of money placed in the bank by Franks for the purpose of carrying on this venture was such a breach of the contract by Bridgeman that Franks was justified in removing the sheep to McFarland. The trial court evidently found against this contention on the theory that paragraph 10 of the contract contemplated such advances being made by Franks during the continuation of the venture, wherein it provides:

"In the event first party advances any funds in the furtherance of this contract for such labor or to second party for his living expenses during the life of this contract, the same should be paid to first party from the portion of profits herein accruing to the second party and said sum shall be a lien on the profits accruing to the second party under this contract."

We see no reason to disturb the view of the trial court in this respect.

Defendant in error further contends that both parties mutually abandoned the provision set forth in paragraph 5 of the contract relating to the place of keeping the sheep. We have examined the evidence with reference to this contention, but are unable to see any reason why we should reverse the trial court in its findings against this position.

We have carefully considered the evidence with reference to the finding of the court to the effect that the remaining portion of the shed on the land where the sheep were taken care of should be vested in Bridgeman, and we think that finding is supported by the evidence.

We apprehend this case to be an equity action, and we are guided on appeal by the rule that in an equity action the findings of fact in a trial court will be sustained unless they are clearly against the weight of the evidence. Prowant v. Sealy, supra; Voris v. Robbins, 52 Okla. 671, 153 P. 120; Schock v. Fish, 45 Okla. 12, 144 P. 584; Tucker v. Thraves, 50 Okla. 691, 151 P. 598; Mitchell v. Leonard, 55 Okla. 626, 155 P. 696; Thomas v. Halsell, 63 Okla. 203, 164 P. 458; Rouss v. Crawford, 69 Okla. 110, 170 P. 688.

With this rule in mind we have carefully examined the evidence in this case, and we are inclined to follow the judgment of the trial court in this matter.

For the reasons stated the judgment is affirmed.

The Supreme Court acknowledges the aid of Attorneys Carl H. Livingston, Oras A. Shaw, and E. C. Mead in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Livingston and approved by Mr. Shaw and Mr. Mead, this cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and RILEY, BUSBY, and PHELPS, JJ., concur.