## METROPOLITAN LIFE INSURANCE COMPANY v. HARVEY

(No. 2111; September 21, 1939; 93 Pac. (2d) 930)

502

For the plaintiff in error, there was a brief and oral arguments by *William E. Mullen* of Cheyenne and *Vincent Mulvaney* of Casper.

504

For the defendant in error, the cause was submitted upon the brief of *Fred W. Layman* of Casper.

KIMBALL, Justice.

The plaintiff sued the defendant life insurance company for $892.50, the amount of 17 monthly instalments of $52.50, alleged to be due as disability benefits under a group life insurance contract between defendant and plaintiff's employer. The trial was to a jury who found that plaintiff was entitled to recover $262.50, the amount of the instalments due January 18, 1938, and monthly thereafter until the date of trial. The defendant prosecutes error from the judgment on the verdict.

The group life policy provided that the insurance on the life of an employee should be discontinued on the date of the termination of his employment, which in

this case was September 30, 1936. It was provided, however, by section 1(b) of the policy, that "upon receipt by the company of due notice and proof—in writing—that an employee, while insured hereunder, and prior to his 60th birthday, has become totally and permanently disabled, as a result of bodily injury or disease, so as to be prevented thereby from engaging in any occupation and performing any work for wage or profit" the company, "three months after the receipt of such proof, shall commence to pay" disability benefits in monthly instalments (in this case $52.50) and continue payments for a stated period (in this case 40 months) "should said employee continue totally and permanently disabled." Section 5 of the policy provided "that no payment for total and permanent disability shall be made unless written notice thereof has been presented to the company within one year after the termination of the insurance on any such disabled employee."

Plaintiff in his petition alleged that on July 15, 1936, he suffered an injury which caused total and permanent disability; that on October 18th, 1937, he "notified said defendant of said injury and submitted statement and proof of claim provided by said defendant, which said statement was received by said defendant on October 22nd, 1937."

Defendant in its answer alleged that plaintiff's employment, and the insurance on his life, terminated on September 30, 1936; "that no written notice as required by said group life policy was ever presented to defendant company within one year after the termination of the insurance on said plaintiff," and that plaintiff therefore was "barred from any recovery." The reply alleged that "written notice, as required by said group policy, was presented to the defendant on or about September 24, 1937."

The evidence in regard to notice showed conclusively that notice in writing of plaintiff's alleged disability was received by defendant before September 24, 1937, the date when receipt of the notice was acknowledged, and blank forms for use in making proof were sent to plaintiff's attorney. The proof on the form so furnished was sent to defendant on October 18, 1937, and its receipt acknowledged on October 21. These facts were not in dispute. The only objection to the evidence was on the ground that the petition alleged that the plaintiff submitted statement and proof of claim on October 18, 1937, and that the reply alleging notice on or about September 24, 1937, was a departure. When the evidence was offered, it was clear that the "statement and proof of claim," mentioned in the petition, was the proof of disability sent to the company on October 18, 1937, and that the "written notice," referred to in the answer and reply, was a notice dated September 16, and received by defendant before September 24, 1937. We think there was no material departure, and that in the circumstances it was proper to construe the reply as aiding the petition by supplying the allegation of presentation of notice within a year after September 30, 1936.

In this court, defendant does not deny that it received notice of disability within a year after the termination of plaintiff's employment, but argues that contract provisions, not referred to in its answer, required proof of disability also to be presented within the same time. This point should not be decided, as it was not raised in the trial court.

The answer pleads an order of the district court, made April 26, 1938, denying plaintiff's claim for compensation for permanent total disability in a proceeding under the Workmen's Compensation law. The plaintiff in his reply alleged that the order was immaterial, and the judge on the trial refused to admit it

in evidence. The ruling was correct. The defendant was not a party to, or interested in, the compensation proceeding, and the order therein did not create an estoppel in its favor. Freeman on Judgments (5th ed.) §§ 407, 426. Defendant argues that the order, though not proof of an estoppel, was admissible in evidence because the answer pleading it was not attacked by motion to strike. We cannot agree that the pleading of an irrelevant fact gave the defendant the right to establish it by proof. See City of Pawhuska v. Black, 117 Okla. 108, 244 Pac. 1114; Givens v. North Augusta etc. Co., 91 S. C. 417, 74 S. E. 1067; Braun v. Woollacott, 129 Calif. 107, 61 P. 801; Berkley v. Burlington Cadillac Co., 97 Vt. 260, 122 Atl. 665, 668.

It is contended that the evidence was not sufficient to prove that the plaintiff was totally and permanently disabled. On July 15, 1936, plaintiff suffered an injury which is described in Stanolind Oil & Gas Co. v. Harvey, 52 Wyo. 349, 75 P. (2d) 1. In the present case there was substantial evidence to support a finding that the plaintiff had been totally disabled by bodily injury and disease, "so as to be prevented thereby from engaging in any occupation and performing any work for wage or profit" from the date of the accident to the date of trial, May, 1938. No beneficial purpose would be served by an extended recitation of the evidence. We believe that defendant does not intend to assert that plaintiff was not totally disabled after the injury until May 31, 1937, but stresses the fact that on that date a report of the Mayo Clinic (see Stanolind Oil & Gas Co. v. Harvey, supra, at p. 360 of 52 Wyo.), stating that plaintiff was suffering from post-traumatic neurosis, recommended that plaintiff resume light work, and that several physicians who testified for defendant were of opinion that plaintiff, at the time of trial, was able to do light work (e.g. tending a lawn) for 2 or 3 hours a day, and if he would do so and gradually in-

crease the amount of work, he would be able to resume his former occupation after 6 months or a year. The plaintiff's evidence, however, showed that after report of the Mayo Clinic, plaintiff was unable to resume light work as recommended. He testified that he tried muscular exercises suggested by the physicians, and did small jobs about the home, such as spading the garden, carrying a bucket of water, lifting, pushing a lawnmower, cutting weeds and helping with the family washing, and that the physical exertion caused him to become weak, nervous and "jittery." There was some corroboration in the testimony of neighbors. One physician, testifying in answer to a hypothetical question, and also from what he learned by examining the plaintiff, was of opinion that plaintiff was unable to do any work, and that the disability was permanent. We cannot hold that the evidence was insufficient to support the verdict.

It is contended that the court erred in giving instruction No. 9. The bill of exceptions shows that the court gave to the jury instructions numbered 1 to 14, "instructions numbered 1, 8, 9 and 10 being given over the objection of defendant," and also shows an exception by defendant to the "ruling of the court in overruling objections * * * and in giving said instructions numbered 1, 8, 9 and 10." It would seem that the objection and exception thus shown were too general, if any one of the mentioned group of instructions was correct. See Dickinson v. State, 18 Wyo. 440, 473, 479, 111 Pac. 857, 116 Pac. 448; Richey v. State, 28 Wyo. 117, 134, 201 Pac. 154; McFetridge v. State, 32 Wyo. 185, 197, 201, 231 Pac. 405, 234 Pac. 505. This point, however, has not been raised by counsel, and we prefer to dispose of the objections to instruction No. 9 on less technical grounds. The instruction reads as follows:

"The Court instructs the jury that total and permanent disability, as used in the contract of insurance

issued to plaintiff by defendant, does not mean a total disability lasting until death but means a total disability extending beyond the period of forty months from the date when the first payment is payable to the plaintiff under plaintiff's certificate of insurance."

Defendant asserts that the instruction states an incorrect and misleading definition of permanent disability, and cites authorities holding that "permanently" as used in a policy in connection with the character of the disability, means that the disability resulted from a condition that rendered it reasonably certain, at the time, that it would continue throughout the life of the insured. See Culver v. Prudential Ins. Co., 36 Del. 582, 179 Atl. 400; Starnes v. United States, 13 F. (2d) 212. There are other cases holding that the policy may mean that the disability will be considered permanent if it shall reasonably appear that the condition will continue to exist indefinitely. See Garden v. New England Mut. Life Ins. Co., 218 Ia. 1094, 254 N. W. 287. The cases considering the meaning of "permanent disability" under policies of this kind are discussed, and the conflict of authority noted, in New England Mutual Life Ins. Co. v. Hurst, 174 Md. 596, 199 Atl. 822.

The policy, in a clause that speaks of the amount and number of instalment payments, says that they are fixed "on the assumption that said employee will continue totally and permanently disabled for the period covered by the number of instalments described above." In giving instruction No. 9, the trial judge evidently took the view that this provision of the policy was a definition of "permanent disability" that had been adopted by the parties to the contract. We need not decide whether or not this view was justified. If it be conceded that the instruction was incorrect, we think it was not prejudicial.

The group policy and the certificate held by the plaintiff contain several provisions showing that it

was not intended that payments should be withheld merely because a disease causing disability might in the future be cured. Payments were to begin three months after receipt of proof and continue for 40 months "should said employee continue totally and permanently disabled." Notwithstanding that proof of total permanent disability may have been accepted as satisfactory, the insured was required at any time, on demand from the company, to furnish proof of "the continuance of such disability, but after such disability shall have continued for two full years," the company would not demand such proof more often than once each year. If proof was not furnished, the insured should be deemed "to have recovered from such state of disability." There were other references to the "continuance of" and to the "recovery from" such state of total and permanent disability. There was no intimation that the insured would be guilty of any wrong in accepting and retaining benefits for a supposed permanent disability which should afterwards prove to be temporary. Policies containing similar provisions have been before the courts many times. See notes, 40 A. L. R. 1386; 97 A. L. R. 126. They show that it was understood that the permanency of disability is often uncertain and a mere matter of prediction (see Maresh v. Peoria Life Ins. Co., 133 Kan. 191, 299 P. 934), and that it was intended to provide for payment of benefits during a period when there might be doubt whether a total disability would be permanent. See Grenon v. Metropolitan Life Ins. Co., 52 R. I. 453, 161 Atl. 229. On the question whether there can be a recovery for benefits for a disability that has ended at the time of trial, the cases are not in accord. See New England Mut. Life Ins. Co. v. Hurst, 174 Md. 596, 199 Atl. 822, and cases cited. In the case at bar, however, there was evidence that the total disability continued to the time of trial and was permanent.

The questioned instruction told the jury that the disability was permanent within the meaning of the contract if it would continue beyond 40 months from January 18, 1938, the date when the first instalment was payable. The verdict must be taken as a finding that the total disability, starting July 15, 1936, would probably continue beyond May 18, 1941. We cannot hold that a total disability of that duration is not "permanent" within the meaning of the contract. If there had been an express finding that plaintiff's ability to work would be restored after May, 1941, it probably would have to be rejected as a baseless conjecture.

The judgment will be affirmed.

RINER, C. J., and BURGESS, D. J., concur.