OKLAHOMA SOUTHERN LIFE INS.
CO. et al. v. MANTZ.

No. 30420. Nov. 24, 1942.

*131 P. 2d 70.*

Keaton, Wells & Johnston, of Oklahoma City, for plaintiffs in error.

Everest, McKenzie & Gibbens, of Oklahoma City, for defendant in error.

CORN, V. C. J. This is an appeal by the Oklahoma Southern Life Insurance Company, a corporation, and Great Republic Life Insurance Company, a corporation, from a judgment rendered in the district court in an action brought by plaintiff to recover $5,534.95 for breach of contract.

In May, 1932, the Oklahoma Southern Life Insurance Company entered into a contract with plaintiff, according to the terms of which he was to serve as actuary, and also institute a direct mail solicitation scheme of selling insurance. This program was to be carried on by newspaper advertising and mail solicitation, experience showing that of a given number of applications received as a result of this method of selling, a certain per cent would take out and pay for insurance policies.

The contract provided that plaintiff was to receive $300 per month for six months, and $150 per month thereafter; and, in addition, plaintiff was to receive 15 per cent of the first year's premiums secured by direct solicitation, and an additional 5 per cent of the renewal premiums from the second to tenth years, inclusive.

The contract, execution of which was admitted, provided (quoting only the pertinent portions, which we shall designate as A, B, and C) as follows:

"A. And it is further agreed by and between the parties hereto that as compensation for his services to be rendered by party of the second part, the said party of the second part is to receive the sum of $300.00 per month beginning May 1, 1932, for a period of six months and thereafter shall receive the sum of $150.00 per month, unless the duties of such actuarial services increase to the extent that by mutual agreement the said compensation shall be varied or changed, and in addition thereto the said party of the second part is to receive for his compensation 15 per cent of the First year's premiums on all business, both life and accident, secured through direct solicitation by mail or any other method of direct solicitation, and a renewal of 5 per cent on such business from the second to the tenth year inclusive, in any event.

"B. This contract is to remain in full force and effect as long as it is the desire of both parties to continue with said contract, but in no event shall said contract be terminated in less than twelve months from May 1, 1932. If after May 1, 1933, it is the desire of either party to terminate said contract, then the party terminating said contract hereby agrees to give the other party notice in writing at least sixty days before the termination of the same. " . . .

"C. It is further agreed that in the event of the abandonment of the direct mail solicitation method because of unprofitable operation, this contract shall

terminate otherwise to remain in full force and effect according to the terms hereof."

The plaintiff carried on his duties under the contract for about six months. At about this time the Oklahoma Southern Life Insurance Company encountered difficulties and assigned all of its business to the Great Republic Life Insurance Company. This defendant then terminated the direct mail solicitation business after the scheme had been in operation some five or six months. The plaintiff continued to serve in his capacity as actuary, but, in March, 1933, was notified in writing of the Great Republic's intention to terminate his employment under the contract.

Plaintiff thereafter brought the present action, alleging breach of his contract in that defendant had discontinued the direct mail solicitation method of doing business, thereby preventing plaintiff from obtaining additional compensation which he would have derived from policies issued as a result of this scheme; and that plaintiff was thereby deprived of writing a large volume of business, causing him to sustain a loss of $5,534.95, for which he sought judgment under his amended petition. The plaintiff had been paid his salary under the contract for the full year.

The matter was tried to the court and, after hearing all the evidence, the court took the matter under advisement. Thereafter the trial court rendered judgment for plaintiff for $3,000, and defendants have appealed.

The several specifications of error are presented under three propositions, the first of which is the contention that the proper construction to be given this contract authorized a termination of the direct mail solicitation department at any time the scheme was deemed unprofitable, and that by terminating this portion of the contract the defendant acted within its rights under the contract provisions.

Consideration of the contract in question, especially those clauses hereto-fore set out, reveals that plaintiff was employed to assist defendant in (1) installing the direct mail solicitation business, supervising same, preparing policy forms, etc., and (2) doing all actuarial work for the company. It is defendants' contention that the provision relating to plaintiff's duties actually encompassed two fields of activity, and that the above-quoted contract provisions provided for termination of the actuarial work only after the expiration of one year, while the provision for termination of the direct mail solicitation business was contained in the latter quoted paragraph of the contract.

Contrary to this argument, plaintiff urges that the mail order business, like the actuarial work, was to remain in force for a minimum period of one year. Thus it becomes necessary for us to look to the contract itself, in order to interpret the real meaning and intention of the contract.

Our statutes contain two cardinal principles of the construction of contracts. 15 O. S. 1941 § 155 provides:

"When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible, subject, however, to the other provisions of this article."

And 15 O. S. 1941 § 157 provides:

"The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others."

In Sullivan et al. v. Gray et al., 182 Okla. 487, 78 P. 2d 688, the syllabus states:

"The intention of the parties must be deduced from the entire agreement, and every provision must be construed so as to be consistent with every other provision if possible, and that construction adopted which gives effect to every part of the contract."

To this same effect see Frank v. Bridgeman, 178 Okla. 557, 63 P. 2d 984.

Let us, then, examine this contract in the light of the above-stated princi-

ples. Under plaintiff's interpretation of this contract, the provision quoted as paragraph "B" above must necessarily be the single controlling feature of the contract, thereby providing that the entire contract is to remain in force for one, year from date. Thus, it must necessarily follow that the provision quoted as paragraph "C" is of no force whatever and is, at best, mere surplusage. Had the parties contemplated contracting *that if after the expiration of one year* they determined the direct mail solicitation scheme was unprofitable and they wished to abandon this feature, what could have been more simple than the addition of such definitive phrase, which would thereby have removed any doubt as to the intent. Such was not done. To uphold plaintiff's theory of this contract's meaning it would become necessary to read into it the phrase "after the expiration of one year." It is a settled rule that the court will not supply or read into a contract words or terms not contained therein. See Phoenix Oil Co. v. Mid-Continent Pet. Corp., 177 Okla. 530, 60 P. 2d 1054.

But, viewed in the light of the interpretation sought by defendants, this contract provides, in brief, as follows: Plaintiff is employed to serve as actuary and to carry on a direct mail solicitation campaign. For this he is to receive $300 per month for six months, and $150 per month thereafter, *unless* the duties of actuary increase to an extent demanding his compensation be changed. In addition to the above, he is to receive, in both instances, the remuneration allowed on the premiums and renewals. This part of the contract cannot be terminated without 60 days' notice in writing; and, in no event, can it be terminated before the expiration of one year. Provided, however, that if it is determined that the direct mail business is unprofitable, then this part of the contract can be terminated and brought to an end.

Under this interpretation effect is given to all clauses of the contract. Under plaintiff's interpretation the contract provides, first, that in no event is it to be terminated before the expiration of one year; then, in a following clause it provides that the contract can be terminated whenever the direct mail solicitation scheme is deemed unprofitable. When viewed in this fashion it becomes clear that the interpretation sought to be placed on the contract by plaintiff is clearly unreasonable. The provisions mentioned thereby become clearly inconsistent, and it is then impossible to give effect to one provision without doing violence to the other.

The record discloses that during the time the direct mail scheme was in operation about $109,000 worth of insurance was sold. On this amount the premiums were $2,254, while the expenses amounted to some $8,000 or $9,000, in addition to the salary paid the plaintiff.

Under the contract plaintiff is entitled to 15 per cent of the premiums, plus 5 per cent of the renewal premiums for the second to the tenth years, inclusive. So far as the record reveals, the amount due for premiums has been paid up to January, 1934.

We are, however, of the opinion that the proper construction of the contract is that it was a contract whereby plaintiff was employed for six months at $300 per month, and for an additional six months at $150 per month, with the provision that the contract should not terminate for one year; and that he was to serve as actuary and also to carry on a direct mail campaign which, if determined to be unprofitable, could be terminated. To construe this contract otherwise makes it unreasonable and unfair, whereas, to construe it in the manner in which we view the agreement, with every clause considered in relation to the others, the entire contract can be given meaning.

For the reasons stated, the judgment is reversed.

WELCH, C. J., and OSBORN, BAYLESS, and GIBSON, JJ., concur. RILEY, HURST, and DAVISON, JJ., absent. ARNOLD, J., disqualified and not participating.