Jerry Mae KELSO, Appellant,

v.

Emerson R. KELSO, Kelso Department Store, Incorporated, a corporation, Kelso Clothing Company, Inc., a corporation, Aircraftsmen, Inc., a corporation, Charles W. White, and Elizabeth Beatrice Avant, Executrix of the Last Will and Testament of Tom Avant, Deceased, Appellees.

No. 5077.

United States Court of Appeals Tenth Circuit.

Aug. 6, 1955.

Rehearing Denied Sept. 1, 1955.

John H. Cantrell, Oklahoma City, Okl., for appellant.

J. A. Rinehart, El Reno, Okl., for appellees.

Before PHILLIPS, Chief Judge, and HUXMAN and PICKETT, Circuit Judges.

PICKETT, Circuit Judge.

Jerry Mae Kelso and Emerson R. Kelso were formerly husband and wife. On July 21, 1951, Mrs. Kelso obtained a decree of divorce from Kelso on a cross-complaint. On the same day the parties executed a property settlement agreement which was incorporated in the decree. Thereafter, a dispute arose as to the handling of the property set aside to Mrs. Kelso and the amount of the monthly payments which were to be made to Mrs. Kelso. This declaratory judgment action was brought to obtain an interpretation of certain provisions contained in the agreement and decree. The trial court found against Mrs. Kelso on the principal issues presented. 124 F.Supp. 294.

Kelso was an active businessman in the City of El Reno, Oklahoma, and was engaged in several different enterprises and businesses at the time the decree was entered in the divorce action. He was a majority stockholder in Kelso Department Store, Inc., Kelso Clothing Co., Inc., and Aircraftsmen, Inc., and a partner in Charley White Food Market, of El Reno, Oklahoma, the Village Market, and Tom Avant Motor Company of El Reno, Oklahoma. The property settlement made provision for a division of these businesses and of real and personal property which belonged to the parties. It is evident from the terms of the agreement that the parties, as nearly as possible, intended to divide equally all of the property owned by them. It is also evident that Kelso was to retain possession of the interest of Mrs. Kelso in the businesses; manage and operate them as he had in the past; and make monthly payments to Mrs. Kelso. The provision providing for such monthly payments reads:

"That such division of property shall be by way of settlement of property rights between the parties, the second party Jerry Mae Kelso agreeing to pay all income tax on income which she receives from said property and as a further consideration first party Emerson R. Kelso agrees that in the future operation of the various properties above mentioned, the profits and income as earned of the second party will be faithfully and properly paid to her at the rate of $1,000.00 per month, and in the event her interest in said properties and businesses does not earn that amount per month, then such deficiency may be charged against her later earnings of said property to supply such deficiency."

Immediately after the entry of the divorce decree, and by virtue of his control over the business enterprises, Kelso, unknown to Mrs. Kelso, allocated to the different businesses certain amounts which each one was to furnish to make up the $1,000 monthly payments to Mrs. Kelso. Apparently these amounts were fixed arbitrarily and had no relation to the earnings of the business. In keeping records of these payments, if Mrs. Kelso's share of the profits did not equal the amount of the payment allocated to a particular business, Kelso charged the difference against her capital interest in that business. As a result, the books showed a substantial reduction in the interests of Mrs. Kelso in each business.[1]

Some time after the entry of a divorce decree, the Village Market was sold and

---

1. The monthly charges and the total capital reductions were as follows:

| Business | Monthly Charge | Charged Against Capital |
|---|---|---|
| Charley White Food Mkt. | $300.00 | $7453.07 |
| Tom Avant Motor Company | 300.00 | 7050.00 |
| Kelso Department Store, Inc. | 150.00 | 2621.24 |
| Aircraftsmen, Inc. | 150.00 | 3441.02 |
| The Village Market | 100.00 | Liquidated. |

Kelso reduced the $1,000 monthly payments by $100, and continued to pay $900 a month. No payments have been made since this action was filed.

Kelso construed the contract to mean that he was under no obligation to pay Mrs. Kelso any sum over and above her share of the profits from the different businesses. In keeping her accounts, he considered any payments over and above her share of actual earnings to be in the nature of an advancement and chargeable against her property as he had allocated them. The trial court agreed with this construction.

We are unable to find in the words of the agreement and the circumstances surrounding its execution a justification for such construction. If Kelso is permitted to manipulate the payments and the deficiencies as he has done, he soon could dissipate Mrs. Kelso's entire interest in any or all of the businesses which she owned as her absolute property. The purpose of the contract was "the full settlement of the property rights or claims for alimony" growing out of the marital relations of the parties. Although the contract did not provide for alimony, provision was made through a division of the property for the support and maintenance of Mrs. Kelso. It is quite evident from the language of the contract that it was the intention of the parties that Mrs. Kelso should have a monthly income of $1,000 as long as Kelso continued to control and operate her property, and we think by the terms of the contract Kelso obligated himself to make such payments even though the profits and income from Mrs. Kelso's share did not equal that amount.[2] His only right to recoup any deficiencies was from the future earnings of her property.

In construing a contract, the whole of the same must be considered together so as to give effect to every part if reasonably practicable. 15 Okl.St. Ann. § 157; Greeson v. Greeson, 208 Okl. 457, 257 P.2d 276; Shorten v. Mueller, 206 Okl. 62, 241 P.2d 187; Oklahoma Southern Life Ins. Co. v. Mantz, 191 Okl. 515, 131 P.2d 70; Sullivan v. Gray, 182 Okl. 487, 78 P.2d 688; Franks v. Bridgeman, 178 Okl. 557, 63 P.2d 984; Prowant v. Sealy, 77 Okl. 244, 187 P. 235. The intent of the parties is. to be gathered from a consideration of the contract as a whole. Tilley v. Allied Materials Corp., 208 Okl. 433, 256 P.2d 1110; Cities Service Oil Co. v. Geolograph Co., Inc., 208 Okl. 179, 254 P.2d 775; Fourth Nat. Bank of Tulsa v. Eidson, 205 Okl. 145, 236 P.2d 491. Courts, in construing a contract or a judgment of a court based upon a contract, may not rewrite the agreement or decree. Cities Service Oil Co. v. Geolograph Co., Inc., supra; Shorten v. Mueller, supra; Federal Deposit Ins. Corp. v. Grim, 184 Okl. 275, 86 P. 2d 774; Occidental Life Ins. Co. of Cal. v. Marmaduke Corbyn Agency, 10 Cir., 187 F.2d 553. The paramount object in construing contracts is to ascertain the intent of the parties at the time the contract was entered into and to give effect to their intention, if it can be done consistent with legal principles. 15 Okl. St.Ann. § 152; Coston v. Adams, 203 Okl. 605, 224 P.2d 955; Popplewell v. Jones, 202 Okl. 185, 211 P.2d 283; McDowell v. Droz, 179 Okl. 119, 64 P.2d 1210; Gladys Belle Oil Co. v. Clark, 147 Okl. 211, 296 P. 461; Tradesmen's Nat. Bank of Oklahoma City v. Harris, 145 Okl. 54, 291 P. 38; Strange v. Hicks, 78 Okl. 1, 188 P. 347. The trial court in effect held that the $1,000 provision in the contract was meaningless; that Mrs. Kelso was entitled to receive only her share

2. Kelso testified that the reason he agreed to the $1,000 monthly payment was because Mrs. Kelso "kept demanding that and demanding it, and demanding that whether the business earned it or not; what she wanted was $1,000.00 per month". He testified that during the negotiations he advised Mrs. Kelso and her attorney that if $1,000 per month was paid and there was a deficiency, it would have to be charged to her capital account. No such provision was put in the contract.

of the earnings from the different businesses; and that any amounts received over and above her share of the earnings were in the nature of loans. This, we think, is contrary to the contract provisions and the intention of the parties.

■ Until this action was brought, the parties construed the contract as requiring the payment of $1,000 per month. It is true that Kelso interpreted it as permitting him to charge her property with any deficit, but nevertheless he recognized that Mrs. Kelso was entitled to the full monthly payment while he had the use of all her property. He made the payments and Mrs. Kelso received them for thirty months. Where there is doubt as to the meaning of the terms of a contract, the construction given by the parties may be considered and adopted even though the contract is susceptible to another construction. 15 Okl.St.Ann. § 165; Hales v. Henry Black, Limited, Inc., Okl., 264 P.2d 355; Joachim v. Board of Education of Walters, 207 Okl. 248, 249 P.2d 129; Gillham v. Jenkins, 206 Okl. 440, 244 P.2d 291; Perry Journal Co. v. Shaw, 204 Okl. 479, 231 P.2d 369; McDowell v. Droz, supra; Woods v. Davis, 155 Okl. 6, 7 P.2d 905; Strange v. Hicks, supra; Wiebener v. Peoples, 44 Okl. 32, 142 P. 1036.

■ Considering the contract as a whole, together with the circumstances surrounding its execution and the purpose which it sought to accomplish,[3] we interpret the foregoing provisions of the contract to mean that Kelso was by its terms to pay Mrs. Kelso $1,000 per month so long as he had possession and control of her property, and if her share of the earnings did not equal the monthly payments, he could make up the deficiency only from her share of any future earnings. It is manifest that the payments are not alimony and that the parties intended that the payments should be related to the earnings of Mrs. Kelso's share of the property. But the payments were not controlled by earnings, so we think that if all the property were sold and Mrs. Kelso received her share of the proceeds from the sale, she would no longer be entitled to monthly payments. Likewise, if a portion of Mrs. Kelso's property were sold by her, she would not be entitled to have the proceeds from the sale and also full payment from Kelso for the use of her property. In the event a portion of her property is sold, the $1,000 should be reduced in the proportion which the property disposed of has to the value of all her property.[4]

■ The agreement also contained a provision relating to an annuity in the Northwestern Mutual Life Insurance Company for the benefit of Patricia Kelso, a minor child of the parties, which had a cash value of $21,000. It was agreed that Kelso should retain this policy for the benefit of Patricia, but that he might use the same for "quick assets in the operation of his several businesses", in which event the agreement provided that "he will protect the beneficiary interest of Patricia Kelso therein to that amount by the transfer to her of other property of equal or greater value, to the end that she will at the age of twenty-five years have property of the value of $25,000.-00." Kelso used this policy for security and did not transfer any property to

---

3. In Kondos v. Stauffer, 180 Okl. 185, 69 P.2d 338, 342, the Oklahoma Supreme Court said:
"In the first place, the court should place itself, so far as possible, in the position of the parties, and consider the instrument as drawn, the circumstances surrounding the transaction, the purpose in view, and determine the meaning of the words used, so as to carry into effect the intention of the parties. Prowant v. Sealy, 77 Okl. 244, 187 P. 235. In this case it was held that: 'Where

a contract is ambiguous, the true intention of the parties, if it can be ascertained therefrom, prevails over verbal inaccuracies, inapt expressions, and the dry words of the stipulation.'"

4. For example, if at the time of sale the share of Mrs. Kelso in all the businesses had a total value of $100,000 and one of them was sold or liquidated, and Mrs. Kelso received $20,000, the monthly payments should be reduced by one-fifth, or $200.

Patricia. At the time of the trial of this case, the policy was unencumbered. We think that Kelso does not have the right to use this policy as he sees fit without giving the protection to the minor child for which the contract provides. This was the substance of the trial court's holding and it is stated in the brief that "Kelso had no quarrel with the declaration and direction of the trial court".

Judgment is reversed and the case remanded with instructions to proceed in accordance with the views herein expressed.