METROPOLITAN LIFE INSURANCE COMPANY, a Corporation, Plaintiff in Error,

v.

Thomas F. FISHER, Defendant in Error.

No. 39677.

Supreme Court of Oklahoma.

Nov. 28, 1962.

Rehearing Denied June 11, 1963.

Ben L. Burdick, Robert W. Pittman, Crowe, Boxley, Dunlevy, Thweatt, Swinford & Johnson, Oklahoma City, for plaintiff in error.

Bishop & Bishop, H. Corky Bishop, Seminole, for defendant in error.

JACKSON, Justice.

In the trial court, plaintiff Thomas F. Fisher sued defendant Metropolitan Life Insurance Company for total and permanent disability benefits allegedly accruing under an insurance policy issued by the defendant company.

He based his claim upon the first paragraph of Section 1(b) of the policy, which provides as follows:

"Total and Permanent Disability Benefits—Upon receipt by the Company of due notice and proof—in writing—that any Employee, while insured hereunder * * * has become totally and permanently disabled, as a result of bodily injury or disease, so as to be prevented thereby from engaging in *any* occupation and performing *any* work for wage or profit, the Company * * * three months after receipt of such proof, shall commence to pay * * monthly instalments as defined below to the said Employee * * * ; provided, that if such disability is due to, or is accompanied by, mental incapacity, the instalments may be paid to the Beneficiary of record of said Employee, and the Company will *continue* such payments for the period provided below, should said Employee *continue* totally and permanently disabled." (Emphasis supplied.)

There is little dispute as to the facts in this case. Plaintiff was insured under a Group Policy issued to his employer, an oil company. In June, 1950, he suffered an injury to his back while employed as a roustabout for said company and earning about $75.00 per week, but he was retained on the payroll of his employer, part of the time at half pay, until October 31, 1951, when he was discharged as being "unable to perform duty for which employed". The previous month he had presented a claim to defendant insurance company, which was rejected.

In January, 1952, plaintiff submitted to surgery, necessitated by the back injury, in which a ruptured disc was removed and spinal fusion performed. Since that time he has suffered pain and discomfort and has been hospitalized on several occasions for short periods of time. At time of trial he was still taking medication for relief from pain.

Several months after his operation, plaintiff enrolled in a course for radio technicians at Oklahoma City University. While attending school part time he worked for a radio shop in Bethany, and his wife worked full time to help pay the family expenses. After completing the course in 1953, he obtained employment from the Public Service Company in Tulsa as a radio technician at a starting salary of about $298.00 per month. His work consisted for the most part of "shop work", taking care of the radio equipment used by that company in its vehicles in the Tulsa area. He was apparently very successful in this employment, preferring it to his former work as a roustabout. As a result of periodic salary increases, he was earning about $480.00 per month at time of trial in December, 1960. He also had the privilege, if he desired, of using the company equipment for servicing television and radio sets for private customers after hours. The record does not show what the income, if any, from this outside work amounted to.

Five medical witnesses testified, two for plaintiff and three for defendant. Although differing on details, they were in general agreement that plaintiff was totally and permanently disabled from performing heavy or ordinary manual labor, but that he was capable of performing the kind of work in which he had been engaged since 1953 for Public Service Company. Two of the doctors, including one chosen by plaintiff who helped perform the surgery, set his

disability sometime after the operation at 25% permanent partial disability.

The original petition in this case was filed in January, 1952, at which time only one of the 60 monthly payments of $72.00, which the insurance company had contracted to pay in case of total and permanent disability, had accrued. For reasons not appearing in the record, the case was not tried until December, 1960. Shortly before trial plaintiff amended his petition to ask for all 60 payments which, under his theory, had then accrued, plus interest. Verdict and judgment were for plaintiff as prayed for in the petition.

■ It appears that in insurance policies such as the one here concerned, two general types of "total and permanent disability" are defined: (1) "non-occupational" policies insure against disability to perform *any* occupation, and (2) "occupational" policies insure against disability to perform a *particular* occupation. The latter type, involving the greater risk, would warrant a higher premium. Plaintiff in this case was insured under a policy of the former type.

The distinction between the two has been recognized by this court in past decisions. See the following cases involving policy provisions of the "non-occupational" type: American National Ins. Co. v. Story, 178 Okl. 519, 63 P.2d 33; Metropolitan Life Ins. Co. v. Brown, 190 Okl. 338, 123 P.2d 255; Continental Casualty Co v. Wynne, 36 Okl. 325, 129 P. 16; New York Life Ins. Co. v. Razook, 178 Okl. 57, 61 P.2d 686; and Mid-Continent Life Ins. Co. v. Bean, 179 Okl. 394, 65 P.2d 1018.

For a case involving a provision for disability of the "occupational" type, see Metropolitan Life Ins. Co. v. Richter, 173 Okl. 489, 49 P.2d 94.

■ On appeal in the instant case, Metropolitan presents three propositions, one of which is that the court erred in an instruction to the jury in which he defined "total disability" as

"* * * a disability to engage in the important and necessary functions of

*the trade or profession described in the application and policy * * *."* (Emphasis supplied.)

It is evident that under this instruction, the jury was permitted to return a verdict for plaintiff upon a bare showing that he was totally and permanently disabled from working as a roustabout. It had the effect of reducing the quantum of proof required of plaintiff, and the further effect of subjecting the defendant company to liability for a risk not covered by its insurance contract. It was therefore erroneous and prejudicial, and had the effect of denying defendant a fair trial.

In this connection, it should be noted that this court has consistently construed policy provisions of the "non-occupational" type liberally in favor of the insured. We have held generally that in order to preclude a finding of total and permanent disability, insured's new occupation must be something at least comparable in dignity, permanency and remuneration to his old one. See cases cited above.

The general argument contained in the briefs of defendant insurance company (plaintiff in error) on appeal may be summarized as follows: that plaintiff was equipped by education and prior training and experience to keep records and to do clerical and office work; and that under undisputed evidence in this case, plaintiff was working at a better job, and making more money, at time of trial, than at the time of his injury; he was therefore not "totally and permanently disabled" within the meaning of the policy, which insured only against a disability to work at *any* occupation substantially as good, and as remunerative, as his work as a roustabout.

The gist of the argument of plaintiff Fisher on appeal is as follows: under undisputed evidence in this case, at the time this case was filed plaintiff was totally and permanently disabled within the meaning of the policy provision, since he could no longer follow his former occupation, and *at that time* was not qualified to follow any other; and that defendant insurance com-

pany should not be allowed to take advantage of the commendable diligence, perseverance and determination of plaintiff in thereafter qualifying himself for a new occupation, to escape liability in this case.

An insurance policy is a contract. In re Barry's Estate, 208 Okl. 8, 252 P.2d 437, 35 A.L.R.2d 1052. Contracts are to be construed as a whole, each clause helping to interpret the others. Oklahoma Southern Life Ins. Co. v. Mantz, 191 Okl. 515, 131 P.2d 70; 15 O.S.1951 § 157.

We find in the insurance contract here concerned a wealth of evidence that the term "permanent" was not used in its literal sense. See, for instance, the latter part of the policy provision from which we have quoted in the second paragraph of this opinion, to the effect that the company will continue to make the monthly payments "should said Employee *continue* totally and permanently disabled" (emphasis supplied). Although we are aware that it might be argued that the quoted language is a part of a proviso having to do with mental incapacity, which is not a factor in this case, other policy provisions, not limited in application to situations involving mental incapacity, demonstrate the fallacy of this argument.

In the next paragraph of the policy, it is provided that the computation of the number and amount of the monthly payments shall be based upon certain named factors, and on the assumption that the employee will *continue* totally and permanently disabled.

In the first paragraph of Section 12 of the policy it is provided that notwithstanding the acceptance of prior proof of total and permanent disability, the company may, at any time during the first two years, require proof of the *continuance* of such disability, and may thereafter require such proof once per year.

In the second paragraph of Section 12, it is provided that if the employee *recovers* from his state of total and *permanent* disability before all monthly instalments have been paid, or if he fails upon demand to furnish proof of the *continuance* of such disability, the monthly payments will cease.

It is patent that the provisions above referred to were for the benefit of the company which wrote the policy, and that they recognize situations where the company is liable for payment for permanent disability which is actually "impermanent". They enable the company, under its contract, legally and in good faith to escape liability for payments for disability previously agreed to be permanent.

The distinguishing feature of the fact situation before us is that plaintiff's period of "permanent" disability came to an end, not because of any change in his physical condition, but because he qualified himself for a new job. It is therefore not surprising that the parties have not cited any case exactly in point on the facts, and our research has disclosed none. However, in New York Life Ins. Co. v. Morgan, 187 Okl. 214, 101 P.2d 826, we considered a case where an insuror, by its contract purporting on its face to insure only for permanent disability, had made itself liable for payments for disability which was actually "impermanent". In that case we said at page 830 of the Pacific Reporter:

"The case of Maze v. Equitable Life Insurance Company of Iowa, 188 Minn. 139, 246 N.W. 737, 738, though not directly in point by reason of a difference in the language of the policy before the court, is sufficiently analogous to be enlightening and is especially valuable in demonstrating that *the word, 'permanent,' in a policy of this character can not be given a literal meaning and made to square with other provisions of the policy.*

\* \* \* \* \* \*

"It was therein said that: '\* \* \* the word "permanent" as used in a contract of the character now before us is to be construed according to its nature and in its relation to the subject-matter of the contract.' It was pointed out that the provision of the policy, which \* \* \* provided for \* \* \* pay-

ment of disability benefits during the 'continuance of such disability' and which also provided for periodical proof of continuance of disability, demonstrated an intention on the part of the company to pay for disability *which might not in fact be permanent as that word is used in the literal sense."* (Emphasis supplied.)

Comparable provisions are in the policy now under consideration. We therefore hold that the liability of defendant insurance company is not limited to payments for disability which is permanent in the literal sense.

We know of no case in which this court has approved a definition of "permanent disability" as such term is used in the insurance contract under consideration. Because of disparate policy provisions and fact situations, cases from other jurisdictions are not conclusive; however, they disclose a general trend among the appellate courts toward giving the term a relative, as opposed to an absolute, meaning.

In Metropolitan Life Ins. Co. v. Frisch, 116 Ind.App. 657, 65 N.E.2d 852, 66 N.E.2d 768, the Indiana court defined permanent disability as such disability as will "probably continue indefinitely with no present indication of recovery".

In Wallace v. Brotherhood of Locomotive Firemen and Enginemen, 230 Iowa 1127, 300 N.W. 322, the Iowa court held that "permanent disability", when used in a policy containing provisions for the cessation of payments in the event of recovery or improvement of the insured, would be construed as meaning disability that is *presumed* permanent, rather than absolutely permanent.

In Penn Mutual Life Ins. Co. v. Milton, 160 Ga. 168, 127 S.E. 140, 40 A.L.R. 1382, the Supreme Court of Georgia, on certification from the Court of Appeals, gave an affirmative answer to the following question: "Could a total disability, which during the continuance thereof was of such a character that a recovery therefrom was not probable, or that it might have been

reasonably presumed that it would continue indefinitely, but which disability lasted for only 16 months, the insured having then in fact recovered, be thereafter said to have been a 'permanent disability' within the meaning of the above-quoted clauses of the policy?" The provisions referred to as the "above quoted clauses" included provisions very similar to the ones contained in the policy in the case now before us.

In Metropolitan Life Ins. Co. v. Harvey, 54 Wyo. 501, 93 P.2d 930, the insurance policy involved contained provisions identical with those concerned in the instant case, and was apparently issued by the same company. The court held in effect that continuance of the disability for the maximum period for which the company could be held liable in any event (40 months in that case) was "permanent disability" within the meaning of the contract.

In Kramer v. Metropolitan Life Ins. Co., 144 Ohio St. 13, 56 N.E.2d 248, the Ohio court approved a definition of permanent disability substantially the same as that used by the Indiana court in Metropolitan Life Ins. Co. v. Frisch, supra.

Upon due consideration of the above cited cases, and many others, we are of the opinion that the phrase "total and permanent disability", as used in the insurance contract now before us, means total disability which will probably continue indefinitely with no present indication of recovery.

We therefore hold that where, under a life insurance contract providing for monthly payments of total and permanent disability benefits, the insuror has the right periodically to demand proof of the continuance of "permanent" disability, and further has the right to stop the payments if the insured should recover from his state of "permanent" disability, total disability will be deemed to be permanent within the meaning of the policy when it is such that it will probably continue indefinitely with no present indication of recovery.

We also agree with the holding of the Georgia court in Penn Mutual Life Ins.

Co. v. Milton, supra, to the effect that the recovery of the insured from his state of "permanent" disability prior to the adjudication of such fact will not preclude a recovery.

It is also suggested by the defendant insurance company that there is some evidence in this case that plaintiff Fisher had held jobs of a clerical nature prior to his employment as a roustabout; that on a retrial of this case, such evidence would preclude a finding of total and permanent disability, and that this court should therefore reverse the judgment with directions to enter judgment for defendant.

The evidence referred to was given by plaintiff Fisher on cross examination. It disclosed that he had worked as "chief clerk in the property department, office furniture and fixtures" at the Oklahoma Ordinance Works. This position involved, among other things, keeping records and "sitting at a desk". What else was involved was not shown, except that he did not physically move the furniture and materials kept there. Later, he worked under a temporary civil service rating for the United States Government in California. His classification was "warehouse man" and he had supervisory duties which did not include record keeping; however, he was not required to physically move the "tractors, Caterpillars, and heavy equipment" stored there. What else, if anything, was involved in these positions is not shown, and on the record before us we cannot say that no ordinary manual labor was involved. The record does not show how long he worked at these positions, or how much income he derived from them.

■ In Rushing v. Travelers' Insurance Company of Hartford, 133 F.Supp. 707 (D. C., Eastern District of Oklahoma), the federal court, in a cogent summary of the law on this point, said:

"* * * the Oklahoma decisions do, by clear implication adopt the majority

and modern rule which although recognizing that under the plain policy terms. the insured must be unable to follow 'any occupation' (as distinguished from his original or usual one) before being entitled to payments, takes into account factors such as the insured's education, experience and ability to follow another vocation, *together with the dignity, permanency and amount of income which can be earned from the substituted or alternative occupation.* * * *"
(Emphasis supplied.)

■ Upon the evidence above summarized, we cannot say that Fisher's prior occupations were of such "dignity, permanency and amount of income" as to preclude a finding of total and permanent disability, as that phrase is used in the policy here concerned.

■ In this connection, it should be noted that the question of whether the insured is totally and permanently disabled within the meaning of the policy is ordinarily a question to be determined by a properly instructed jury. Metropolitan Life Ins. Co. v. Brown, 190 Okl. 338, 123 P.2d 255.

Throughout this opinion, we have avoided the term "temporary" and have used the more awkward term "impermanent", but we have done so advisedly. Defendant did not contract to pay plaintiff for temporary disability. If, for instance, he had merely broken his leg, such injury would probably have been temporary.

■ Where an erroneous instruction to the jury has the effect of depriving appellant of a fair trial, the cause will be reversed for a new trial. Aetna Life Ins. Co. v. Watts, 148 Okl. 28, 296 P. 977.

The judgment is reversed and the cause is remanded with instruction to grant plaintiff in error a new trial.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and HALLEY, JOHNSON, IRWIN and BERRY, JJ., concur.